**SKYLINE CORPORATION, Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.**

No. 79–1594.

United States Court of Appeals, Fifth Circuit.

March 19, 1980.

---

Alley & Alley, Chartered, John Edward Alley, Michael R. Miller, Robert D. Hall, Jr., Tampa, Fla., for petitioner cross-respondent.

Lafe E. Solomon, Atty., N.L.R.B., Washington, D.C., for respondent cross-petitioner.

Before CHARLES CLARK, RONEY and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The International Brotherhood of Electrical Workers, Local 440, AFL–CIO–CLC (hereinafter referred to as the "union"), filed a representation petition with the National Labor Relations Board (hereinafter referred to as the "Board" or the "NLRB"). The union and Skyline Corporation (herein-after referred to as the "employer" or the "company") signed a "Stipulation For Certification Upon Consent Election." Subsequently, a Board-conducted representation election was held. Thirty-eight employees voted for, and thirty-five against the union. Several ballots were challenged, although some challenges were later cleared by union and company election representatives. Both the union and the company filed objections to conduct affecting the results of the election. The Acting Regional Director (hereinafter referred to as the "Director") conducted an investigation, and each side had an opportunity to present evidence. The Director issued a report recommending that the remaining challenges to the ballots and the company's and union's remaining objections (save one, which is unimportant here) be overruled. The ballots were opened and counted, and the union was victorious still with a margin of thirty-nine votes for union affiliation and thirty-seven against. The company filed exceptions to the report, but the Board, after consideration of those exceptions, adopted the Director's report. The company filed supplemental objections. The Director again held an investigation, again recommended that the company's objections be overruled, and the Board once more adopted his report. The Board then certified the union as the employees' bargaining representative.

The company refused to bargain with the union, insisting instead that the union furnish it with statistics on the race, gender and ethnic background of its membership. The union refused, and filed an unfair labor practice charge with the Board. The Board's General Counsel moved for summary judgment on the issue of whether the company had committed an unfair labor practice by refusing to bargain. In addition to opposing the motion, the company urged the Board that it was entitled to a hearing on its objections to the election, previously litigated in the representation proceedings, because of newly discovered and previously unavailable evidence. The Board granted the General Counsel's mo-

tion for summary judgment. 240 N.L.R.B. No. 96 (1979). It rejected the company's allegations that it was not required to bargain, and held that all issues raised by the company in the unfair labor practice proceedings were or could have been heard in the representation proceeding, and that the company did not offer to produce at a hearing any newly discovered or previously unavailable evidence which could not have been obtained by due diligence, nor show any special circumstances which would require the Board to reexamine its earlier decision. The Board ordered the company to cease and desist from its unfair labor practices and, affirmatively, ordered the company to bargain with the union as its employees' duly elected representative. The company petitions for review of this order and the Board cross-petitions for enforcement. The company asks that we examine both the representation proceedings, which preceded the certification of the union as the employees' bargaining representative, and the following unfair labor practice proceedings.

*The Representation Proceedings*

■ The company contends that certain of the procedures set out in the N.L.R.B. Casehandling Manual were not followed while the challenged ballots were in the custody of the Board. It complains that the envelopes containing the ballots were not sealed with tape, that there was no label with the name of the person who sealed the envelope, and that no memo was placed in the file stating where the challenged ballots were stored, all in violation of the Manual. The Director considered this objection in his supplemental order, and found that the procedures used were adequate to assure that there was no tampering with the ballots.

In *Delta Drilling Co. v. NLRB*, 406 F.2d 109 (5th Cir. 1969), this court approved the decision in *Athbro Precision Engineering Corp.*, 166 N.L.R.B. 966, 966 (1967), in which the Board concluded that "[t]he commission of an act by a Board Agent conducting an election which tends to destroy confidence in the Board's election process, or which

could reasonably be interpreted as impugning the election standards we seek to maintain, is a sufficient basis for setting aside that election." In *Delta Drilling*, we held that there need not be evidence of actual tampering or that it is likely to have taken place. Rather, it is also the appearance of impropriety against which the Board must guard. We also said that an employer should be able to rely on the Board's adherence to its own policy, and that it is entitled to the same degree of confidence in the election process as are the employees. However, in *NLRB v. Dobbs Houses*, 435 F.2d 704 (5th Cir. 1970), we limited *Delta Drilling*. In the latter case, we relied on the fact that the employer and the union entered into a consent agreement providing the Director's decision on election objections would be binding. Thus, the Board itself had not acted on the merits of the case. In *Dobbs Houses*, we held that where the Board itself considers the merits of an allegation of improper ballot handling, it should be accorded reasonable latitude in applying its own rules. 435 F.2d at 705 n. 1.

Here, there was no provision in the parties' pre-election consent agreement which prevented the Board from weighing the merits of the Company's objection. Upon that consideration, through adoption of the Director's findings, the Board ruled that "[w]hile the Employer does assert that the provisions of Manual Section 11344 were not rigidly observed, the undersigned concludes that while it is desirable to follow Manual provisions to the utmost, the facts in this case clearly demonstrate that the ballots were secured, safeguarded, and not tampered with." (Record, hereinafter referred to as "R." 115). As noted, the Board adopted these findings as its own. While *Athbro* and *Delta Drilling* require the Board, in the conduct of an election, to avoid even the appearance of impropriety and to assure adherence by its agents to established policies and rules, we believe that here, where the Board recognized these requirements, but, after a thorough review

of both the facts and the case law, concluded that setting aside the election was not warranted, that decision should stand. *Dobbs Houses, supra,* at 705 n. 1.

■ Finally, we also agree with the Board that a hearing was not required in order to dispose of the company's objections concerning the Board's procedures during the time it had control of the ballots. There is no statutory requirement for a post-election evidentiary hearing on objections to the conduct of an election. The Board's own rules provide for a hearing when there are "substantial and material factual issues." 29 C.F.R. 102.69(d). Otherwise, the Board's own investigation will suffice. This practice is consistent with due process. *NLRB v. Singleton Packing Corp.,* 418 F.2d 275, 280 (5th Cir. 1969), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970); *NLRB v. Smith Industries, Inc.,* 403 F.2d 889, 892 (5th Cir. 1968). The party complaining of the lack of a hearing must present evidence which *prima facie* would warrant setting aside the election; "there must be 'specific evidence of specific events from or about specific people' in support of allegations having a basis in law sufficient to overturn the election." *NLRB v. Golden Age Beverage Co.,* 415 F.2d 26, 33 (5th Cir. 1969), *quoting, NLRB v. Douglas County Elec. Membership Corp.,* 358 F.2d 125, 130 (5th Cir. 1966). If the evidence offered, if true, would be insufficient to overturn the election or if the evidence before the Board presents no material and substantial factual issue, no hearing is necessary. Here, it was assumed that the facts were as the company contended, *i. e.,* that the Board agents failed to follow the Manual in certain minor respects. Obviously, then, the company did not present any evidence which *prima facie* would warrant setting aside the election.

■ The company argues next that the Board denied it due process by failing to consider, under its most recently announced standard, the company's objection to certain election conduct of the union. The compa-

ny claimed, in the representation proceedings below, that the union made certain misrepresentations to the employees before the election. The Director reviewed the objections under the standard set forth in *Hollywood Ceramics Co.,* 140 N.L.R.B. 221 (1962). Before the Board adopted the Director's report, it announced a new rule, in *Shopping Kart Food Market, Inc.,* 228 N.L.R.B. 1311 (1977), which allowed employers and unions much greater leeway in making pre-election representations. The Board later adopted, without further discussing the matter, the Director's report, which included review and rejection of the employer's objection under the old *Hollywood Ceramics* rule. The next year, before it issued its opinion in the unfair labor practice proceeding in this case, the Board, in *General Knit of California, Inc.,* 239 N.L.R.B. No. 101 (1978), returned to its former, more stringent, *Hollywood Ceramics* standard of review.

The company contends that because the decision in *Shopping Kart* intervened between the Director's report in the representation proceedings and the Board's adoption thereof, the Board necessarily reviewed the objection under *Shopping Kart.* There is nothing to indicate the Board did anything other than merely accept the Director's report as it was written. We cannot assume that the Board actually considered the objection under some standard other than that used by the Director, but failed to mention its change in the order.

■ The employer also challenges the Board's decision not to count the votes of two employees deemed ineligible to vote in the union election. Beforehand, the company and the union signed a stipulation setting out certain procedures for the election. (R. 3, 5). The agreement stated that only those employees hired on or before the payroll period ending September 8, 1976, would be eligible to vote. At the election, ballots of two employees hired on the 9th and 10th of September were challenged and were not counted. The employer now says that Sep-

tember 8th should not have been inserted, that September 10th was the proper date, for that is the date when the payroll period ends, and that the two employees' ballots should be opened and counted. After conducting an investigation and making detailed findings of fact, the Director properly rejected this objection.

The company does not challenge the Director's findings of fact. Instead, it urges that the Director should have granted it a hearing to determine how the September 8th date was inserted into the agreement, and that there was a "mutual mistake of fact" requiring reformation of the consent agreement to reflect the parties' true intent.

The company states that it's counsel and a Mr. Travers, who accompanied counsel to the Board's office to sign the stipulation, should have an opportunity, through a hearing, to testify concerning the use of September 8th as the eligibility cut-off date. However, as the company states in its brief

> Employer informed the Regional Director that neither counsel for Employer nor Mr. Travers . . . can recall whether the stipulation had a payroll period ending date of Wednesday, September 8, 1976, on it when it was signed. Furthermore, counsel has no recollection of whether he ever informed any Board Agent of the Employer's payroll period ending date or indeed whether any Board Agent ever asked counsel what day of the week the Employer's payroll period ended
>
> . . . .

Petitioner's Brief at 32. The Director quite correctly decided a hearing was unnecessary

in the face of these assertions. The company offered no evidence to conflict with the Director's findings upon his own investigation, and certainly the company's assertion that it could offer no explanation as to how the September 8th date was used does not raise substantial and material factual issues.[1]

Turning to the company's contention that there existed a mutual mistake of fact as to the proper ending date for the payroll period, we will assume that the rule of contract law would apply to this labor law case. We find that, "[a]s a general rule, . . . a mistake by one party to an agreement, where it is not induced by acts of the other party, will not constitute grounds for relief." *Southern National Bank of Houston v. Crateo, Inc.*, 458 F.2d 688, 692 (5th Cir. 1972).[2]

The only evidence in the record shows that the company's representatives do not recall what date they meant to insert into the consent agreement, while there is no evidence, or even an assertion that the union representatives intended any date other than the one stated. The Director's judgment that "[b]ased on all the probative evidence disclosed by the investigation, it is clear that the parties agreed to an eligibility date of September 8, 1976, and that any employees hired after that date were not eligible voters in the election," (R. 42), is founded on substantial evidence in the record as a whole. 29 U.S.C.A. § 160(e).

Next, the company charges that the union's constitution contained provisions which unlawfully coerced members of the bargaining unit. The union's by-laws re-

---

**1.** The cases cited by the employer do not require a different result. In *NLRB v. West Texas Utilities Co.*, 214 F.2d 732 (5th Cir. 1954), there was substantial evidence, presented in a number of affidavits, that Board agents had engaged in improper conduct affecting the election results. The court held the employer was denied due process by the Board's *ex parte* investigation. In *NLRB v. Gooch Packing Co.*, 457 F.2d 361 (5th Cir. 1972), there was conflicting evidence presented by each side as to whether the company had furnished the Re-

gional Director with a copy of a contract which the employer desired to use as evidence against the union. The court said that on remand the Board should resolve this conflict at a hearing, which the court found necessary anyway to determine the question of whether the union had engaged in improper conduct.

**2.** The court applied Texas law, but noted that this was the rule in other jurisdictions as well.

quired that an employee's application for union membership be processed within 90 days. The company maintains that "[s]ince the first petition [for an election] was filed in April, 1976 . . . and since Local 440 necessarily had a 30 percent showing of interest when it filed that petition,[3] it is apparent that by the time the representation election was held in . . . September, 1976 employees of Employer who signed application cards for Local 440 . . were necessarily admitted to membership in IBEW since more than 90 days of making application to the Union had passed." (Petitioner's Brief at 40).

The flaw in this argument is obvious. There is no evidence that any of the employees actually joined the union before the election, and that they did so cannot be inferred from the fact that the union made the requisite showing of support in order to have a Board-conducted election. The Director properly held that the employer had failed to show that *any* employee had applied to or was actually a member of the union before the election. (R. 37). Therefore, there was no demonstration by the company that any employee was actually subject to the union's allegedly coercive constitution, and the objection was correctly dismissed as lacking in merit.

■ Again, the employer insists that a hearing should have been held on this objection, and, again, the employer has failed to point to any substantial or material questions of fact which would warrant such a hearing. The employer, at most, presented only unsupported speculation that some employees were union members.

Finally, in the representation proceeding, one of the grounds upon which the company objected to the union's certification as the collective bargaining agent was its allegation that, upon its "information and belief," the union practiced discrimination on the basis of race, gender and ethnic background. The Director dismissed this objection because it was unsupported by *prima facie* evidence which would justify any further investigation, including a hearing, and because the Board had decided, in *Handy Andy, Inc.*, 228 N.L.R.B. 447 (1977) that allegations of discrimination by a labor organization would be considered only in an appropriate unfair labor practice proceeding. (R. 39). After the union was certified, the company conditioned its honoring the union's request for bargaining upon receipt from the union of statistical information concerning the race, gender and ethnic background of the union's membership. The Board held that the requested information was irrelevant to the company's bargaining obligation. Alternatively, the Board construed the company's request as an allegation that the union practiced invidious discrimination and held that, as in the representation proceeding, the company had failed to offer any evidence which would present a *prima facie* showing of discrimination. Finally, citing *Handy Andy*, the Board said that such allegations were properly cognizable only in a section 8(b), 29 U.S.C.A. § 158(b), proceeding against the union.[4]

■ We agree with the Board's decision that the company failed to present *prima facie* evidence of union discrimination which would have warranted a decision in its favor, or even a hearing on the issue, at any stage of these proceedings. *NLRB*

3. See, 29 U.S.C.A. § 159(c)(1)(A).

4. Although the Board in *Handy Andy, Inc.*, 228 N.L.R.B. 447 (1977), decided that consideration of evidence of invidious union discrimination in a representation proceeding is required neither by the constitution nor by the labor statutes, an employer's door to avoidance of union certification through proper proof of union discrimination is not completely closed. See, *Bell & Howell Co. v. NLRB*, 194 U.S.App.D.C. 217, 226–

31, 598 F.2d 136, 145–50 (D.C.Cir.) cert. denied, 442 U.S. 942, 99 S.Ct. 2885, 61 L.Ed.2d 312 (1979); *NLRB v. Heavy Lift Service, Inc.*, 607 F.2d 1121, at 1124 (5th Cir. 1979) citing, *NLRB v. Mansion House Center Corp.*, 473 F.2d 471 (8th Cir. 1973); see also *NLRB v. Bancroft Mfg. Co.*, 516 F.2d 436 (5th Cir. 1975); *NLRB v. Sumter Plywood Corp.*, 535 F.2d 917 (5th Cir. 1976) (two pre-*Handy Andy* decisions).

*v. Heavy Lift Service, Inc.*, 607 F.2d 1121, at 1124 (5th Cir. 1979); *NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 930–31 (5th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977). If the company, based on the evidence it presented, was not even entitled to a hearing on its allegations of union discrimination, then, *a fortiori*, the company cannot unilaterally condition its bargaining obligation on receipt from the union of information on its racial, sexual and ethnic composition.

### The Unfair Labor Practice Proceeding

In refusing to review the affidavits proffered by the company in opposition to the General Counsel's motion for summary judgment, the Board stated that

All issues raised by Respondent [the company] in this proceeding were or could have been litigated in the prior representation proceeding, and Respondent does not offer to adduce at a hearing any newly discovered or previously unavailable evidence which could not have been obtained by due diligence nor does it allege that any special circumstances exist herein which would require the Board to reexamine the decision made in the representation proceeding.

The company does not quarrel with the rule that "it is not error for the Board in an unfair labor practice proceeding . . . to exclude evidence . . . if that evidence is not newly discovered or was not otherwise available at the representation hearing." *Southwestern Portland Cement Co. v. NLRB*, 407 F.2d 131, 136 (5th Cir.) *cert. denied*, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969). Rather, it objects to what it characterizes as the failure of the Board to articulate reasons for its determination that the employer had not shown due diligence or other circumstances requiring consideration of this belatedly offered evidence. In fact, it alleges, one cannot tell whether the Board decided that no evidence was offered at all, or that the evidence offered was not shown to have been una-

vailable to the company despite due diligence on its part.

We think it is unnecessary speculation to assume that the Board had these affidavits in its possession but failed to recognize their presence. Otherwise, there would have been no reason to mention newly discovered evidence.

Thus, we turn to the question whether the Board abused its discretion in determining that the proffered affidavits were not newly discovered evidence which could not have been obtained with due diligence. See, *NLRB v. WEK Drilling Co.*, 438 F.2d 267, 270 (10th Cir. 1971). The company argues that the Board failed to state the reasons why it decided as it did, and therefore a remand to the Board is necessary, citing *NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965). Alternatively, the company urges that because there is no support in the record for a determination that the company failed to show due diligence in uncovering this evidence, the Board should be required to examine the company's affidavits. We consider a remand to the Board in this situation an overly technical reliance on the requirement that an agency give the basis for its decision before proper judicial review may proceed. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n. 6, 89 S.Ct. 1426, 1430, n. 6, 22 L.Ed.2d 709, 715, n. 6 (1969) (plurality opinion); *Alabama Ass'n of Ins. Agents v. Board of Governors of Federal Reserve System*, 533 F.2d 224, 236–37 (5th Cir. 1976), *vacated in part*, 558 F.2d 729 (1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). Moreover, we do not find the reason for the Board's decision as obscure as the company would have it appear. Other than one of the affiant's statements that he was reluctant to discuss the union with the company before he became a supervisor (R. 273), the company does not point to anything in the record which would support its assertion that it exercised due diligence in obtaining this "new" evidence. It makes only conclusory

allegations about how difficult it is for an employer to communicate with its employees once a union is elected because of the employees' fear of reprisal from the union and other employees, and the employer's fear that it will be held to have committed an unfair labor practice for questioning employees concerning their union affiliation. Statements by counsel in briefs are not evidence. Consequently, there was no competent evidence in the record, other than one statement by one supervisor, to show the company exercised due diligence in attempting to obtain its "newly discovered" evidence. Accordingly, the Board was not in error in determining that no demonstration of due diligence had been made. *Southwestern Portland Cement, supra,* at 136. See also, *NLRB v. L. D. McFarland Co.,* 572 F.2d 256, 261 (9th Cir.) *cert. denied,* 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978); *Van Tran Elec. Corp. v. NLRB,* 449 F.2d 774 (6th Cir. 1971).

Finally, the company says that the union's constitution imposed unlawful preconditions to bargaining. It points to portions of the International Union's constitution which require that certain provisions be included by the local union in the collective bargaining agreement. The Board held that this contention was without merit "since it is the Local Union not the International which was certified and there is no evidence that the Local Union has imposed any preconditions to bargaining."

Assuming, for the sake of argument, that the local union's insistence on inclusion of these terms in a collective bargaining agreement would constitute a defense to an unfair labor practice charge against the company,[5] we agree with the Board that the company's fear that the local union would impose unlawful preconditions to bargaining is premature, as there is no evidence that either the local or the International union has demanded that the cited provisions be included in any agreement.

There is no question that the company refused to bargain with the union. Because the union was properly certified and because the company presented no viable defense to the unfair labor practice charge of refusing to bargain in good faith, the Board properly ordered the company to bargain with the union.

PETITION FOR REVIEW DENIED AND CROSS–PETITION FOR ENFORCEMENT GRANTED.

---

5. While it is true that neither a union nor an employer may insist that the other party negotiate over certain non-mandatory subjects of bargaining, 29 U.S.C.A. § 158(a)(5), (b)(3), (d); *NLRB v. Wooster Div. of Borg-Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 723, 2 L.Ed.2d 823, 829 (1958), such activity will subject the offending party to an unfair labor practice charge. The company points to no case in which one party was permitted to use the other's insistence on a non-mandatory bargaining subject as a defense to an unfair labor practice charge of refusal to bargain. The one case cited by the company in support of its argument, *International Brotherhood of Elec. Workers,* 119 N.L.R.B. 1792 (1958), enf'd 266 F.2d 349 (5th Cir. 1959), involved an unfair labor practice proceeding against a union for unlawfully insisting on certain terms in the collective bargaining agreement in violation of 29 U.S. C.A. § 158(b)(3).