967 F.2d 489
 Fed. Sec. L. Rep. P 96,957
In re U.S. OIL AND GAS LITIGATION.
Gerald B. WALD, receiver of U.S. Oil and Gas Corporation,
Eagle Oil and Gas Corporation, the Stratford
Company, Plaintiffs,
v.
Gurdon WOLFSON, et al., Defendants,
Pinnacle Reinsurance Company, Ltd., a Bermuda corporation,
Defendant-Cross claim Plaintiff, Appellant,
Alexander & Alexander, Inc., a foreign corporation, Jerrell
Riley, Defendants-Cross claim Defendants, Appellees.
Edward B. and Tina M. LEARNED, individually and on Behalf of
all persons who purchased oil and gas programs coupled with
an annuity from U.S. Oil and Gas Corporation and the
Stratford Company, Plaintiffs-Appellees,
v.
Gurdon WOLFSON, et al., Defendants.
 No. 91-5363.
 United States Court of Appeals,
Eleventh Circuit.
 July 28, 1992.
 
 William R. Boeringer, Hayden and Milliken, P.A., Miami, Fla., for Pinnacle Ins. Co.
 John K. Train, III, Alston & Bird, Todd R. David and Laura J. Coleman, Atlanta, Ga., for Alexander & Alexander.
 Edward R. Nicklaus, Nicklaus, Valle, Craig & Wicks, and Marc Cooper, Cooper, Wolfe & Bolotin, P.A., Miami, Fla., for Gerald B. Wald, et al.
 Brenton N. Ver Ploeg, Shutts & Bowen, Miami, Fla., for First Pyramid Life Ins. Co. of America.
 Jerre B. Swann Kilpatrick & Cody, Atlanta, Ga., for Jerrell Riley.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and HATCHETT, Circuit Judges, and BROWN*, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this case of first impression in this circuit, we affirm the district court's imposition of a settlement bar order and establish the standard of review to be abuse of discretion.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 In the late 1970s, the U.S. Oil and Gas Corporation, Eagle Oil and Gas Corporation, and the Stratford Company (the Companies) began selling an advisory service to investors seeking to bid on federal oil and gas leases. The Companies obtained customers through telephone solicitations. The investments were extremely high risk because customers obtained no return on their investment unless they were successful in the lease auctions. In an effort to serve customers who were willing to pay more for lower risk, the Companies developed a "money back guarantee" program. Essentially, the program required the purchase of a master insurance policy for participating investors.
 
 
 3
 The Companies contacted an insurance broker, Alexander and Alexander, Inc. (A & A). After domestic insurance companies refused to participate in the program, A & A obtained a policy from Pinnacle Reinsurance Company, Ltd. (Pinnacle), a Bermuda corporation. Pinnacle issued a $1 million annuity contract in exchange for a $525,000 premium.
 
 
 4
 By 1983, the Companies had sold their services to some 8,000 customers. They had also attracted the attention of United States postal authorities and the Federal Trade Commission (FTC). The FTC filed an enforcement action against the Companies in the United States District Court for the Southern District of Florida, and the court appointed a receiver to protect the interests of the Companies' customers. In 1985, the receiver filed a complaint on his behalf and instituted a class action on behalf of the customers alleging securities fraud and RICO violations.
 
 
 5
 The complaints named A & A, Pinnacle, and ninety-four others as defendants. As the plaintiffs state, the litigation became "breathtakingly complex." Between 1984 and 1990, the court held 50 hearings, the plaintiffs attended 260 depositions, and discovery produced hundreds of thousands of relevant documents. As trial approached, plaintiffs stipulated that more than 700 issues of fact remained unresolved.
 
 
 6
 Near the end of 1990, the possibility of a long, complicated, and expensive trial began to produce settlements. The Morgenstern defendants, a group which had provided legal services to the Companies, entered into the first major settlement with the plaintiffs. On January 26, 1991, pursuant to the settlement agreement, the district court entered a series of orders. These orders approved the fairness of the Morgenstern settlement, dismissed the receiver's and the class's claims against the Morgenstern defendants, and barred "all claims" by non-settling defendants against settling defendants, or by settling defendants against non-settling defendants, related to the subject matter of the litigation. This last order, the Morgenstern settlement bar, drew no serious objections from Pinnacle, which had no cross-claims pending against the settling defendants.
 
 
 7
 Pinnacle did, however, object to the settlement bar order which is the subject of this appeal. In 1988, Pinnacle filed a cross-claim against A & A alleging indemnity, breach of fiduciary duty, fraud, and negligence. Pinnacle claimed that A & A knew of the Companies' fraudulent activities, but wrongfully withheld that information from Pinnacle when it brokered the annuity contract. Throughout the litigation, Pinnacle sought to preserve this claim against A & A, even while it sought settlement with the plaintiffs.
 
 
 8
 Pinnacle's desire to preserve its cross-claim eventually conflicted with the plaintiffs' desire to achieve a favorable settlement with A & A. As plaintiffs' counsel conceded in the district court, plaintiffs did not initially insist that Pinnacle drop its cross-claim against A & A. To the contrary, plaintiffs encouraged Pinnacle to maintain the claim, because "it was helpful to ... [plaintiffs'] case-in-chief ... to have Pinnacle ... dumping the blame on A & A." When Pinnacle and plaintiffs agreed to settle for $500,000, a settlement bar order was not part of the bargain.
 
 
 9
 A & A, however, was still engaged in settlement negotiations with plaintiffs and was not willing to settle its liability without a bar order protecting it from Pinnacle's pending cross-claim. Although A & A and plaintiffs disputed in the district court whether a settlement bar order was a condition precedent to the effectiveness of their settlement agreement, they both agreed that the district court should enter such an order. Plainly, A & A was unwilling to disburse an eight and a half million dollar [$8,500,000] settlement without the assurance that it would be protected from further claims for contribution or indemnity. Even more plainly, plaintiffs weighed A & A's eight and a half million dollar settlement against Pinnacle's five hundred thousand dollar settlement and saw the light of supporting A & A's insistence on a bar order.
 
 
 10
 By the beginning of 1991, the plaintiffs and a large number of defendants had entered into settlement agreements. On January 30, 1991, the district court conducted a hearing to resolve outstanding issues among the settling parties. Chief among these outstanding issues was A & A's insistence on a settlement bar order, plaintiffs' support of such an order, and Pinnacle's opposition to it. The court afforded each party an opportunity to fully argue its position on the settlement bar issue. The court asked Pinnacle whether it sought to withdraw from its settlement with plaintiffs now that plaintiffs and A & A were jointly urging the court to adopt a settlement bar order. Pinnacle stated emphatically that it did not seek to withdraw from the settlement. Rather, it sought to maintain its settlement with plaintiffs and, at the same time, preserve its cross-claim against A & A.[1] After entertaining further argument on the legal issues the settlement bar raised, the district court took the matter under advisement and requested the parties to submit briefs.
 
 
 11
 Plaintiffs submitted a brief supporting the settlement bar, which A & A adopted, and Pinnacle submitted a brief opposing it. On April 12, 1991, the district court entered a settlement bar order extinguishing all claims related to the litigation against the settling defendants. The court reviewed the law supporting settlement bar orders generally and then applied those principles to the facts of the present case. The court recognized and addressed Pinnacle's objections to the order. Nonetheless, it concluded that the order was justified: "If litigation of cross-claims were allowed, the resources of the court, class members, class members' counsel, and defendants' counsel would continue to be expended, because it would be impossible to try cross-claims without addressing the complex facts underlying this litigation.... Settlements in complex cases cannot satisfy their ultimate purposes unless they conclude the litigation in its entirety."[2]
 
 
 12
 Pinnacle filed a timely notice of appeal from the settlement bar order. It did not, however, withdraw from its settlement agreement with plaintiffs and the other defendants. On July 5, 1991, the district court entered a fairness order approving the settlement and final judgment orders dismissing the receiver's and the class's claims against the defendants.
 
 CONTENTIONS OF THE PARTIES
 
 13
 Pinnacle contends that the district court erred as a matter of law when it entered an order barring all of its claims against A & A. Specifically, Pinnacle argues that settlement bar orders may be used to extinguish only claims for contribution. They may not be used, Pinnacle argues, to extinguish the indemnity, fraud, and negligence claims Pinnacle asserted in its cross-claim. In addition, Pinnacle contends that the manner in which the district court entered the settlement bar order deprived it of its due process rights. A & A responds that the district court exercised sound discretion in entering the order and did not err in barring Pinnacle's claims. Further, A & A contends that Pinnacle received a "surfeit" of process in the district court.
 
 ISSUES
 
 14
 The issues presented are: (1) whether the district court erred in entering the settlement bar order; and (2) whether the district court denied Pinnacle due process in entering the order.
 
 DISCUSSION
 The Bar Order
 
 15
 Public policy strongly favors the pretrial settlement of class action lawsuits. See Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir.1977). Complex litigation--like the instant case--can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. See Fed.R.Civ.P. 16(a), (c); see also Rule 16(c) Advisory Committee Note. Although class action settlements require court approval, such approval is committed to the sound discretion of the district court. Fed.R.Civ.P. 23(e); Bennett v. Behring Corp., 737 F.2d 982, 987 (11th Cir.1984); Cotton, 559 F.2d at 1331.
 
 
 16
 Modern class action settlements increasingly incorporate settlement bar orders such as the one at issue in this case. See, e.g., In re. Jiffy Lube Securities Litigation, 927 F.2d 155 (4th Cir.1991); Franklin v. Kaypro Corp., 884 F.2d 1222 (9th Cir.1989), cert. denied sub nom, Franklin v. Peat Marwick Main & Co., --- U.S. ----, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); South Carolina National Bank v. Stone, 749 F.Supp. 1419 (D.S.C.1990); Dalton v. Alston & Bird, 741 F.Supp. 157 (S.D.Ill.1990); Alvarado Partners, L.P. v. Mehta, 723 F.Supp. 540 (D.Colo.1989); Kirkorian v. Borelli, 695 F.Supp. 446 (N.D.Cal.1988). The reason for this trend is that bar orders play an integral role in facilitating settlement. Defendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation. See Franklin, 884 F.2d at 1225, 1229; Jiffy Lube, 927 F.2d at 160. Thus, in the present case, A & A expressed a strong unwillingness to pay eight and a half million dollars to the plaintiffs unless it was assured that Pinnacle's cross-claims would not subject it to further liability. In short, settlement bar orders allow settling parties to put a limit on the risks of settlement.
 
 
 17
 We believe that these principles strongly support the district court's decision to enter a settlement bar order in this case. We note, however, that this case involves unique features which distinguish it from the precedents cited above. In particular, this case presents a settling defendant's challenge to a settlement bar order. In all of the cases previously cited, nonsettling defendants challenged the bar order as prejudicial to their rights. In the typical case involving a nonsettling defendant, the court is concerned with calculating the proper "offset" to ensure that plaintiffs do not enjoy a double recovery against nonsettling defendants in any subsequent litigation of outstanding claims. See, e.g., Jiffy Lube, 927 F.2d at 160-62; Franklin, 884 F.2d at 1230-32. We express no opinion in this case regarding the proper method to be applied in calculating such "offsets." Because Pinnacle agreed to settle, it risked no further liability from plaintiffs. Thus, the district court was not faced with the difficult task of determining the proper offset to ensure that plaintiffs did not gain a "double recovery" in subsequent judgments against nonsettling defendants.[3]
 
 
 18
 A second distinctive feature about this case, related to the first, is the severability of the settlement bar order. At oral argument and in its brief, A & A repeatedly questioned Pinnacle's right to appeal the bar order. We agree that in many cases, a settling defendant's appeal of a bar order would be problematic. To the extent that the bar order is an integral part of the settlement, the settling defendant may have waived the right to object to it. Where the parties have stipulated that the bar order is integral to the settlement, this court may not consider the order in isolation. As Judge Hill wrote in Cotton:
 
 
 19
 We must consider the effect of the settlement as a whole. We are not free to delete, modify, or substitute certain provisions of the settlement. The settlement must stand or fall as a whole.
 
 
 20
 559 F.2d at 1331-32. Thus, as a general rule, we may not consider an appeal of a bar order separately from the entire settlement.
 
 
 21
 In the present case, however, Pinnacle preserved its right to challenge and appeal the bar order, despite its agreement to the settlement as a whole. The final settlement stipulation provides that "Pinnacle's execution of this stipulation is not a waiver of its right to appeal [the settlement bar order]." The stipulation further provides that the settlement "shall be unchanged if ... the bar order is ever modified or vacated by any order of an appellate court, or by any order of the district court after proceedings required by a remand from an appellate court." Knowing that this circuit had never addressed the propriety of settlement bar orders in class action lawsuits, the parties plainly intended that their settlement should remain in effect, even if this court invalidated the bar order as a matter of law. Because Pinnacle carefully reserved its rights, it was entitled to both the benefit of the settlement and a continuing challenge to the bar order on appeal.[4]
 
 
 22
 We now address the merits of Pinnacle's specific challenge. Seeking to distinguish this case from the numerous precedents upholding the validity of settlement bar orders, Pinnacle argues that the district court erred as a matter of law when it barred Pinnacle's claims for indemnity, fraud, and negligence against A & A. According to Pinnacle, settlement bar orders have been entered only in cases where a nonsettling defendant sought to preserve contribution claims against settling defendants. Pinnacle argues that independent claims and indemnity claims cannot be precluded through a settlement bar order.
 
 
 23
 Pinnacle cites only one case as providing direct support for its contention. See In re. Atlantic Financial Management, Inc. Securities Litigation, 718 F.Supp. 1012, 1014 (D.Mass.1988). It offers this court not a shred of logic upon which we could base a principled distinction between bar orders against contribution, on the one hand, and orders against indemnity or so-called "independent claims," on the other. Pinnacle places primary reliance instead upon its argument that most, if not all, of the prior federal cases supporting bar orders dealt exclusively with contribution claims.
 
 
 24
 Pinnacle's legal argument is unavailing. First, several federal courts have approved of settlement bars against indemnity claims. See, e.g., Jiffy Lube, 927 F.2d at 158; Franklin, 884 F.2d at 1225 & 1225 n. 2; United States Fidelity & Guaranty Co. v. Patriots Point Development Authority, 788 F.Supp. 880, 881 (D.C.S.C.1992); Dalton v. Alston & Bird, 741 F.Supp. 157, 160-61 (S.D.Ill.1990). In addition, as the district court noted, the substantive weakness of Pinnacle's indemnity claim supported the entry of the settlement bar against it. Indemnification claims are not cognizable under the Securities Acts of 1933 and 1934. See Stowell v. Ted S. Finkel Investment Services, 641 F.2d 323, 325 (5th Cir.1981). Because Pinnacle's cross-claim was largely an attempt to seek indemnity from A & A for the federal securities law violations alleged against Pinnacle in the complaints, it was unlikely to survive even the most cursory adjudication on the merits. See also South Carolina National Bank v. Stone, 749 F.Supp. 1419, 1429-30 (D.S.C.1990).
 
 
 25
 The settlement bar order is also effective against Pinnacle's allegedly independent causes of action for fraud and negligence. These claims were not, in fact, independent of Pinnacle's or A & A's liability to the plaintiffs. For example, Pinnacle stated in its cross-claim that it "seeks damages against A & A and Riley to the extent that it is liable to any of the plaintiffs herein." As the district court noted in Stone, "a rose by any other name is still a rose." 749 F.Supp. at 1433. As in Stone, Pinnacle's fraud and negligence claims "are nothing more than claims for contribution or indemnification with a slight change in wording." 749 F.Supp. at 1433. Because Pinnacle's fraud and negligence claims were integrally related to plaintiffs' claims against both A & A and Pinnacle, the district court properly extinguished those claims in the settlement bar order.
 
 
 26
 The propriety of the settlement bar order should turn upon the interrelatedness of the claims that it precludes, not upon the labels which parties attach to those claims. If the cross-claims that the district court seeks to extinguish through the entry of a bar order arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims in reaching a fair and equitable settlement. That is precisely what the district court did in this case.[5]
 
 Due Process
 
 27
 At oral argument in this case, the court inquired as to whether, when, and to what extent Pinnacle was aware of the district court's intent to enter a bar order. Pinnacle argued that it did not know about the settlement bar order when it settled. A & A argued that the parties appended the bar order to early drafts of the settlement stipulation, and therefore, Pinnacle was fully aware of it.
 
 
 28
 Our review indicates that Pinnacle did not contemplate the entry of a bar order at the time it reached its settlement with plaintiffs. As noted above, plaintiffs' counsel conceded in the district court that the bar order was not a part of plaintiffs' settlement discussions with Pinnacle. Our review further indicates, however, that by the time the district court entered the bar order several months later, Pinnacle was fully aware that the order had become part of the settlement.
 
 
 29
 On January 30, 1991, the district court held a hearing at which it entertained Pinnacle's objections to the proposed bar order. The court gave Pinnacle the options of withdrawing from the settlement and/or proving that its individual settlement was conditioned upon the absence of a bar order. Pinnacle declined both options. In addition, at the close of the hearing, the district court invited the parties to submit briefs on the issue, and Pinnacle obliged. On April 12, 1991, the district court entered the bar order. The court did not enter final judgments effectuating the settlements, however, until July, 1991, some three months after it entered the bar order. Thus, Pinnacle had numerous opportunities to object to the bar order, withdraw from the settlement, and reserve its rights.
 
 
 30
 A district court may issue a settlement bar order against a nonsettling defendant after it makes a reasoned determination that it is fair and equitable to do so. See, e.g., Jiffy Lube, 927 F.2d at 158-60; Franklin, 884 F.2d at 1232. Surely, then, the district court may enter a settlement bar order against a defendant who has participated fully in settlement negotiations and utilized every opportunity to preserve its rights within those negotiations. In the end, Pinnacle has gotten exactly what it had a right to expect in this case: a binding settlement with plaintiffs and a full opportunity to challenge, at both the trial and appellate levels, the propriety of the settlement bar order.CONCLUSION
 
 
 31
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 32
 AFFIRMED.
 
 
 33
 BAILEY BROWN, Senior Circuit Judge, concurring:
 
 
 34
 I concur in Judge Hatchett's well-written opinion.
 
 
 35
 It seems to me that, in a nutshell, the district court had the authority under the Federal Rules of Civil Procedure (and consistent with due process) to enter the settlement bar order that included Pinnacle because the court made it clear that it would not enter an order settling plaintiffs' claims against Pinnacle without such a bar order and Pinnacle, nevertheless, agreed to an entry of an order settling plaintiffs' claims against it.
 
 
 
 *
 Honorable Bailey Brown, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 The following exchange occurred between the court and counsel for Pinnacle in the January 30, 1991, hearing:
 THE COURT: Well, but if you don't have an agreement, in other words, if there is a mistake of facts, for example, in connection with your settlement, wouldn't the thing for me to do to be just to strike the whole thing and put you and A & A and the plaintiffs' committee back in the same status in which you found yourself before the settlement?
 MR. BOERINGER: No, we're not asking the court to do that.
 THE COURT: But isn't that the right thing to do?
 MR. BOERINGER: Not necessarily, Your Honor. We agreed with the plaintiffs' committee as to what our settlement was. We think what the court ought to do is enforce our settlement agreement with them. That is the proper thing to do is to enforce [the] settlement agreement, not to abrogate everything that's been done.
 
 
 [2]
 In relevant part, the order provided:
 All claims, however denominated, regardless of the allegations, fact, law, theories, or principles on which they are based, including but not limited to claims for contribution or indemnity against the settling defendants by any individual corporation, partnership, unincorporated association, or other type of entity, including, but not limited to any party to this litigation, which claims now exist or have accrued or in the future may exist or accrue, and which arise out of or are in any way related to the class action or the receiver's action or the subject matter of those actions, or arise out of or are in any way related to the Companies, are extinguished, discharged, satisfied, and/or otherwise unenforceable.
 
 
 [3]
 Pinnacle draws the court's attention to the recent decision in Great Lakes Dredge and Dock Company v. Miller, 957 F.2d 1575 (11th Cir.1992). That case arose out of a lawsuit by seamen and their families for injuries and deaths resulting from a collision between a Chevron tanker and a Great Lakes Company dredge in Jacksonville, Florida, in 1975. The court held that neither Chevron's settlement with the plaintiffs, nor Great Lakes's settlement with the plaintiffs, barred Great Lakes from pursuing contribution claims against Chevron. We find that Great Lakes is neither controlling nor persuasive authority in the present case. First, the court in Great Lakes carefully and repeatedly limited its holding to the unique context of maritime law. The court reasoned that rejection of the settlement bar rule was necessary to preserve comparative fault in the wake of the Eleventh Circuit's adoption of a pro tanto method for apportioning damages between maritime tort-feasors in Self v. Great Lakes Dredge and Dock Co., 832 F.2d 1540 (11th Cir.1987). The court examined the singular history of comparative fault in maritime law and based its holding upon the overriding need to preserve comparative fault principles in that particular area of the law. We also note that the Great Lakes court was not reviewing a settlement bar order entered in connection with a class action case. Thus, legal or factual findings did not support the propriety of the settlement bar in Great Lakes, nor was it cloaked in the discretion of the district court to enter such orders pursuant to class action settlements
 
 
 [4]
 Thus, Pinnacle's appeal is not a "piece-meal" challenge to the settlement. The bar order is the only issue in dispute. We would waste judicial resources if we required all the parties to brief and argue all facets of the settlement, when the parties have stipulated that they are satisfied with the settlement as a whole
 
 
 [5]
 Thus, the case before us is not one of those rare instances where a cross-claim unrelated to defendants' liability to the plaintiffs has somehow remained in the case. We question whether truly independent claims that a settlement bar order cannot extinguish will ever remain in a class action lawsuit. We do not decide that hypothetical question, however, on the facts before us. Suffice it to say that in this case, as in most others involving cross-claims between defendants in a class action lawsuit, the cross-claims were sufficiently related to the subject matter of plaintiffs' case against defendants that the district court properly barred all such claims