[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11409
_____

D.C. Docket No. 1:16-cv-21301-DPG

SECURITES AND EXCHANGE COMMISSION,

Plaintiff,

versus

ARIEL QUIROS,
WILLIAM STENGER,
IRONSHORE INDEMNITY, INC.,
MICHAEL I. GOLDBERG,

Defendants-Appellees,

JAY PEAK, INC., et al.,

Defendants,

LEON COSGROVE, LLC,
MITCHELL, SILBERBERG & KNUPP, LLP,

Interested Parties-Appellants.
_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 20, 2020)

Before WILSON, MARCUS, and BUSH,[*] Circuit Judges.

WILSON, Circuit Judge:

A bar order is an extraordinary form of relief. Often sought by a party to a settlement, a bar order extinguishes extraneous claims against the settling party, tying up the settling party's loose ends and encouraging resolution in complex cases that could otherwise span years. But a bar order buys peace at a high price: It bars potentially valid claims that non-settling parties could assert against the settling party.

Because a bar order is a strong cure for the ills of complex litigation, a party seeking a bar order to facilitate a settlement faces a high bar. It must show, among other things, that the bar order is essential to the settling parties' settlement.

This case turns on what it means to be "essential" to a settlement. The district court here entered a bar order barring the appellants' claims against the settling appellees. It concluded that the bar order was essential to the appellees' settlement because the order was essential to facilitating all settlement payments. The appellants say this was error. They claim that a bar order is essential only if it is needed to resolve the settling parties' litigation. Since the settling parties here

---

[*] Honorable John K. Bush, United States Circuit Judge for the Sixth Circuit, sitting by designation.

would have settled their dispute even without the bar order, the appellants claim that the district court abused its discretion in entering the order.

We agree with the appellants. The record makes clear that the bar order was not essential to resolving the settling parties' dispute. And so we vacate the bar order.

## I.

This is a complicated receivership proceeding, so we will recite only the necessary facts. In 2016, the Securities and Exchange Commission (SEC) filed a civil enforcement action against Ariel Quiros and some of his corporations. It claimed that Quiros engaged in securities fraud. Soon after, the district court appointed Michael I. Goldberg as receiver, empowering him to take control of Quiros's corporations and act to benefit their defrauded investors.

Many collateral cases sprung from the SEC action (the fraud-related actions). Facing multiple lawsuits, Quiros hired Leon Cosgrove, LLC and Mitchell, Silberberg & Knupp, LLP as counsel (the law firms). But Quiros had a problem: Back in the SEC action, the district court had frozen Quiros's assets. He was thus unable to pay his attorneys.

To obtain funding for his defense, the law firms sought insurance coverage for Quiros under his professional-liability policy with Ironshore Indemnity, Inc.

Ironshore disputed coverage.  So the law firms sued Ironshore on Quiros's behalf in a separate proceeding (the coverage action).

To fund Quiros's defense in the fraud-related actions while the coverage action remained pending, the law firms and Ironshore negotiated an Interim Funding Agreement (the IFA).  Under the IFA, Ironshore agreed to advance defense costs up to $1 million, so long as Quiros would repay those costs if the coverage-action court ultimately ruled that there was no coverage.  The IFA listed the law firms as approved counsel.  It also noted that the law firms did not have to repay any legal fees if the court ruled for Ironshore on coverage; Quiros alone would be responsible.

Fighting on several fronts, the law firms quickly burned through the $1 million contractual limit.  But before they could file invoices under the IFA, Quiros fired them.  Around the same time, the receiver in the SEC action took the position that the court's asset-freeze order blocked Quiros from using even insurance to pay his counsel.  The law firms—contending that they were owed $1 million under the IFA—tried to intervene in the SEC action to get the district court to clarify (or modify) the scope of the asset freeze.  When the district court denied their motion to intervene, they appealed.

Eventually, the law firms filed an unopposed motion to modify the asset-freeze order to permit the dispersal of funds under the IFA.  In effect, the proposed

modification let the law firms proceed against Ironshore unencumbered by the asset-freeze order. The district court granted the motion, and the law firms dropped their appeal. They then sued Ironshore in New York state court, seeking $1 million under the IFA. As far as the record shows, that case remains pending.

Sometime later, the receiver, Ironshore, and Quiros (the appellees) reached a settlement in the SEC action that purported to resolve the coverage issues.[1] They agreed that Ironshore would pay $1.4 million dollars to resolve the coverage action. They also agreed that Ironshore would issue a $500,000 final payment if the district court entered an order barring related claims, including the law firms' IFA-lawsuit against Ironshore. The settlement agreement noted, however, that it did not turn on the final payment; if the district court refused to enter the bar order, the litigation would still settle for $1.4 million.[2]

The district court—over the law firms' objection—entered the bar order. In doing so, the court found that the bar order was essential to the settlement. The law firms now appeal.

**II.**

---

[1] William Stenger—another defendant in the SEC action—was also part of the settlement and is an appellee. He did not file an appellate brief, though, and his involvement does not change our analysis. For simplicity, then, we will refer to the receiver, Ironshore, and Quiros as the appellees.

[2] We address the settlement provisions that make this intent clear in Part III.

A district court has "broad powers and wide discretion to determine relief in an equity receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). Given the similarity between bankruptcy and receivership proceedings, we often apply bankruptcy principles to receivership cases because we have limited receivership precedent. *See id.* at 1567, 1572–73; *see also Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019), *cert. denied sub nom. Becker v. Janvey*, ___ S. Ct. ___, No. 19-919, 2020 WL 1496642 (Mar. 30, 2020). We review a district court's entry of a settlement bar order for abuse of discretion. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 491 (11th Cir. 1992). A district court abuses its discretion when it makes "a clear error of judgment" or "applie[s] the wrong legal standard." *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014).

A bar order is an extraordinary remedy—it can bar a third party's claim, even though the third party may not be part of the relevant lawsuit or settlement. For this reason, we've warned that courts should enter bar orders "cautiously and infrequently and only where essential, fair, and equitable." *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1079 (11th Cir. 2015) (citation omitted) (internal quotation mark omitted). This is a two-part inquiry. The court must conclude that the bar order is essential. And it must decide that the bar order is fair and equitable, with an eye toward its effect on the barred parties. *See, e.g.*, *In re*

*Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) (first analyzing whether an order was essential and then considering whether it was fair and equitable).

We have not yet had the chance to explain what makes a bar order "essential" when it is entered to facilitate a settlement in a receivership proceeding. But we find our answer in the analogous bankruptcy context: A bar order is essential when it is "integral to settlement." *Id.*

Yet this answer begs a new question: When is a bar order "integral to settlement?" Is it "integral" when needed to facilitate all parts of the settlement? Or is it "integral" when needed to settle the parties' litigation?

Our case law supports the latter view. In *Munford*, we held that a bankruptcy court could issue a bar order only when the settling defendant "would not have entered into the settlement in the absence of such bar order." *See In re Seaside*, 780 F.3d at 1078; *In re Munford*, 97 F.3d at 455. *Munford* thus held that the bar order there was appropriate because, "[b]ut for the bankruptcy court's bar order," the parties "would not have entered into the settlement agreement." 97 F.3d at 455. We have also held, in the bankruptcy-restructuring context, that bar orders should issue only in "unusual cases in which such an order is <u>necessary</u> for the success of the reorganization." *In re Seaside*, 780 F.3d at 1078 (emphasis added).

7

Citing these precedents, many courts in our circuit have held that a bar order must be "essential" to resolving the settling parties' dispute. *See In re Jiangbo Pharm., Inc.*, 520 B.R. 316, 323 (Bankr. S.D. Fla. 2014) ("The evidence before the Court shows that the Bar Order is an integral part of the Amended Settlement without which it would not be consummated."), *aff'd sub nom. Brophy v. Salkin*, 550 B.R. 595 (S.D. Fla. 2015); *In re Rothstein Rosenfeldt Adler, P.A.*, No. 09-34791-BKC-RBR, 2010 WL 3743885, at *6 (Bankr. S.D. Fla. 2010) (finding that a bar order was essential because the settlement allowed the parties to terminate their agreement without the bar order and because the trustee "testified that without a bar order, the Settling Parties would not have had entered into the Settlement"); *In re Sentinel Funds, Inc.*, 380 B.R. 902, 905 (Bankr. S.D. Fla. 2008) (holding that a bar order was "not integral to the settlement" because the settlement did not rise or fall on the bar order and instead required the trustee only to "use his best efforts to obtain [the bar order]").

The policy driving settlement bar orders also supports interpreting "essential" to mean "essential to settling the litigation." These orders stem from "[p]ublic policy strongly favor[ing] pretrial settlement" in complex cases, which "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas*, 967 F.2d at 493. The orders "play an integral role in

8

facilitating settlement," as they allow defendants to "buy" peace from "cross-claims for indemnity, contribution, and other causes related to the underlying litigation." *Id.* at 494. As a result, the policy behind settlement bar orders supports their use only when they are needed to halt the parties' litigation.

To be sure, we have affirmed a bar order that the settling parties marked as non-essential to resolving their dispute. *See id.* at 494–96. But the parties did not raise essentiality in that appeal. *See id.* The appellant there challenged the bar order only for its purportedly overbroad application to the appellant's indemnity claims. *See id.* And further, the court acknowledged that, notwithstanding the language of the settlement agreement, the parties probably would not have settled absent the bar order. *See id.* at 492 ("Plainly, A & A was unwilling to disburse an eight and a half million dollar [$8,500,000] settlement without the assurance that it would be protected from further claims for contribution or indemnity." (alteration in original)). The opinion also issued before we cemented the essentiality element in our case law, and so we did not have reason to reflect on whether to strike the bar order for being non-essential. *Compare id.* (issued in 1992), *with In re Munford*, 97 F.3d at 455 (issued in 1996). We have also limited *In re U.S. Oil & Gas*, noting that our holding there reached only the question before us then. *See AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312 (11th

Cir. 2004). For these reasons, *In re U.S. Oil & Gas* does not answer the question before us now.

With all this in mind, we now hold what we've long hinted: A bar order issued to facilitate a settlement is essential only if it is essential to resolving the settling parties' litigation. If the parties would have still resolved their dispute without entry of the bar order, the order is not essential and the court should not enter it.

## III.

Against this backdrop, we have little trouble holding that the district court made a clear error of judgment when it concluded that the bar order was essential to the settling parties' settlement. To do so, we first turn to the best indicator of the parties' intent—their settlement agreement.

Recital (K) is the earliest indicator of the bar order's role in the settlement. The recital says that the "settlement is contingent on the District Court approving this Agreement and that the parties shall seek the issuance of a bar order." Doc. 523-1 at 3 (emphasis added). Key here is that the settlement turns on the parties "seek[ing] issuance of a bar order," not on the entry of a bar order. *See, e.g.*, *In re Sentinel Funds*, 380 B.R. at 905 (holding that a bar order was "not integral to the settlement" because the settlement did not rise or fall on the bar order and instead required the trustee only to "use his best efforts to obtain [the bar order]").

10

Recital (L) then provides context.  It explains that the sole conditions precedent "to the full effectiveness of the settlement" are entry of a proposed preliminary approval order and proposed final approval order—neither of which involved a bar order.  Doc. 523-1 at 3.  The recital later explains that "if the District Court in the SEC Action enters [the bar order]," Ironshore will make a "Final Payment" of $500,000.  *Id.*  In other words, the bar order triggers a final payment, but the settlement of the parties' litigation is fully effective without it.

Finally, if there remained any doubt, Paragraph 3 erased it.  The paragraph provides that, "[f]or avoidance of doubt," Ironshore will pay $1.4 million "regardless of whether a Bar Order, if one is issued, becomes final and non-appealable."  *Id.* at 4.  The paragraph also states that the parties' claim releases "shall become irrevocably effective" upon payment of the $1.4 million, no matter if Ironshore pays the $500,000 final payment.  *Id.*

These provisions are unambiguous.  The litigation ceased upon payment of the $1.4 million.  The bar order merely triggered a $500,000 collateral payment.  And thus the plain text of the parties' agreement makes clear that the bar order was not essential to resolving the parties' dispute.

Given the settlement agreement's clarity, it is arguable that the agreement was all the district court could consider in deciding whether the bar order was essential to settling the parties' litigation.  *See In re Sublett*, 895 F.2d 1381, 1384

11

(11th Cir. 1990) (explaining that the meaning of an unambiguous contract is a question of law that requires no additional extrinsic evidence). We need not decide this issue, though, because even if the court considered extrinsic evidence, we still conclude that it made a clear error of judgment. *See Arthur*, 739 F.3d at 628.

We'll start by saying that the appellees did not submit traditional extrinsic evidence on the importance of the bar order to their settlement. The most we find in the record (aside from the agreement itself) is their memorandum filed in support of the settlement agreement. Since "[s]tatements by counsel in briefs are not evidence," it is again arguable that the district court could not have considered these statements. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) (quoting *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980)). But even if the court could have considered the appellees' memorandum as evidence of their intent, their statements there only hurt them, as they confirm the settlement agreement's plain language. Indeed, the memorandum explains that the "total amount" that Ironshore is willing to pay hinges on the entry of a bar order. Doc 523 at 8. It also claims that the bar order is a "condition precedent" to the $500,000 payment. *Id.* Layman's terms: The bar order is essential to issuing an

12

extra payment.  Nothing in these statements supports the view that the bar order is essential to settling the parties' litigation.[3]

To leave no stone unturned, we move from the appellees' memorandum statements to their arguments at the bar order hearing.  There is little to review.  At the hearing, the law firms argued, as they do here, that essential means essential to resolving the litigation.  But of the 60-page transcript, the appellees' discussion with the district court about essentiality took just 6 lines:

> THE COURT: One of the arguments that was made a moment ago is that the settlement agreement really isn't contingent on the bar order. Is that correct or incorrect?
>
> [IRONSHORE'S COUNSEL]: The $500,000 extra payment is contingent on the bar order. Yes, the settlement will still go through but for a lesser amount, but for the bar order.

Doc. 552 at 53–54.

That all but decides the issue.  The settlement agreement explains that the bar order is not essential to resolving the appellees' litigation.  The appellees' memorandum confirms this intent.  And the appellees did not even try to argue

---

[3] We reject the idea that the memorandum's claim that the bar order "has been a key settlement term" suffices to support a finding that the bar order was essential to the litigation.  Doc 523 at 8. When viewed alongside the appellees' other memorandum arguments, it's clear that they called the bar order a "key settlement term" because it was "key to facilitating all settlement payments."

otherwise at the bar order hearing.  To the contrary, counsel for Ironshore admitted what the settlement agreement makes clear: The settlement would "still go through" without the bar order.  It was essential only to trigger the final settlement payment.  It was not essential to resolve the dispute.

*     *     *

Bar orders are unusual forms of relief: They can strip non-settling parties of their day in court, through no fault of their own.  When used to facilitate a settlement, they are warranted only when they are essential to resolve the settling parties' litigation.  A district court's entry of a bar order is due respect—we review the order only for abuse of discretion.  But given this settlement's plain language, the appellees' confirming memorandum statements, and their position at the bar order hearing, we conclude that the court here made a clear error of judgment in finding that the bar order was essential to the appellees' settlement.  We thus **VACATE** the bar order.