In re CENDANT CORPORATION
SECURITIES LITIGATION.

This document Relates to: All
Actions Except PRIDES.

No. 98–CV–1664 (WHW).

United States District Court,
D. New Jersey.

Aug. 15, 2001.

Douglas Eakeley, Lowenstein Sandler PC, Roseland, NJ, for E & Y.

Carl Greenberg, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., Short Hills, NJ, for Cendant.

## OPINION

WALLS, District Judge.

This opinion is a companion to this Court's earlier opinion which resolved Ernst & Young ("E & Y")'s motion to dismiss various cross-claims asserted against it by Cendant Corporation ("Cendant"). *See In re Cendant Corp. Sec. Litig.*, 139 F.Supp.2d 585 (D.N.J.2001) (the "April 16 order" or "April 16 slip op."). Familiarity with that opinion is presumed. That opinion granted E & Y's motion to dismiss Count VIII of the Amended Cross Claims, styled a contribution claim, but denied the remainder of the motion as to Cendant's state law claims against E & Y, which E & Y had sought to dismiss on

various theories. However, it did not directly address E & Y's argument, raised in its reply papers, and in E & Y's motion to certify the April 16 order for immediate appeal, that all of Cendant's Amended Cross Claims should be dismissed because they are impermissible contribution claims in disguise, or alternatively, E & Y's motion to strike the portion of the damages claim to the extent it seeks to recover any of the $2.8 billion paid in settlement to plaintiffs by Cendant. The Court solicited further response from Cendant on this issue, and now, pursuant to Fed.R.Civ.P. 78, decides the remaining issue without oral argument. The motion to dismiss the state law claims and/or to strike the damages demand is denied.

E & Y also moves to certify the April 16 order which denied in part E & Y's motion to dismiss Cendant's cross-claims as immediately appealable under 28 U.S.C. § 1292(b). E & Y asserts that it seeks review of the holding in that opinion that the PSLRA contribution bar did not preclude Cendant from attempting to seek contribution from E & Y for its alleged fair share of the $2.8 billion settlement under other independent state law tort theories. Because the issue E & Y seeks to appeal was not directly addressed in that opinion but is now directly addressed in Part I of this opinion, this Court construes E & Y's request as one to certify this Opinion and Order as appealable. That motion is decided without oral argument and is denied.

## I. Motion to Strike Prayer For Damages Which Seeks Recovery of Amounts Paid By Cendant in Settlement With Plaintiffs

E & Y argues that if any of the state law claims survive the motion to dismiss, which they did, then this Court should strike Cendant's prayer for damages to the ex-

tent Cendant seeks to recover any portion of the $2.8 billion settlement payment by Cendant to plaintiffs. E & Y maintains that because Cendant is seeking to recover the settlement payment, which is measured by Cendant's liability to plaintiffs, this element of damages transforms the state law claims into impermissible contribution claims, which it asserts are equally barred by the PSLRA contribution bar, no matter how they are styled. E & Y contends that no matter how a claim is labeled, it is a contribution claim if it is " 'measured by' the defendant's liability to the plaintiff." E & Y Reply to E & Y's Motion to Dismiss Cendant's Cross Claims ("E & Y Reply"), at 5, quoting *TBG, Inc. v. Bendis,* 36 F.3d 916, 928 (10th Cir.1994). It also makes the related argument that in any event, to the extent the claim seeks to recover damages that could have been sought by contribution, that portion of the claim should be considered barred by the PSLRA contribution bar because it seeks to shift liability between joint tortfeasors. Cendant responds that it does not matter that the damages sought overlap with what could have been sought in a contribution claim so long as there is an independent basis for recovery under Cendant's independent state tort and contract theories.

In *Bendis,* upon which E & Y relies, plaintiffs settled their securities law claims with certain defendants but not others, and the settlement provided that the settlement was contingent upon the court's entry of a bar order which would bar all related claims against settling defendants by the nonsettling defendants and upon the court ordering a judgment reduction for any judgment against the nonsettling defendants by the amount paid by the settling defendants (a "pro tanto" judgment reduction). 36 F.3d at 919, 922. The nonsettling defendants opposed entry of the bar order. The court began by first observing that Congress had not yet passed any statutory bar order under the securities laws but that many federal courts had agreed to enter bar orders in securities cases in reliance on the federal policy which favors encouragement of settlements. *Id.* at 923–24. The *Bendis* court observed that the other courts which had agreed to bar related state law claims have done so when the "damages are measured by the defendant's liability to the plaintiff. . . . *Besides contribution and indemnity claims, these include any claims in which the injury is the nonsettling defendant's liability to the plaintiff.* . . . No court has authorized barring claims with independent damages." *Id.* at 928 (emphasis added), citing *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 554 (D.Colo.1989); *U.S. Oil & Gas Litig.,* 967 F.2d 489, 495–96 (11th Cir.1992). The court did not say, contrary to E & Y's interpretation, that all claims for which damages are "measured by" the defendant's liability to the plaintiff constitute claims for contribution. In fact, the court's language indicates that it distinguished among claims for contribution, indemnity, and those other claims whose injury and damages happen to encompass the defendants' liability to plaintiffs. It simply stated that it would be fair to bar related claims that seek to recover those damages. The Court does not agree with E & Y's interpretation of this statement that all claims by a defendant against a codefendant which measure damages by a defendants' liability to the plaintiff are automatically claims for contribution.

In re *Oil & Gas* involved a review of a district court's entry of a settlement bar order which extinguished all claims related to the litigation against the settling defendants. *See* 967 F.2d 489, 493 (11th Cir. 1992). The bar order stated:

All claims, however denominated, regardless of the allegations, fact, law, the-

ories, or principles on which they are based, including but not limited to claims for contribution or indemnity against the settling defendants by any individual corporation, partnership, unincorporated association, or other type of entity, including, but not limited to any party to this litigation, which claims now exist or have accrued or in the future may exist or accrue, and which arise out of or are in any way related to the class action or the receiver's action or the subject matter of those actions, or arise out of or are in any way related to the Companies, are extinguished, discharged, satisfied, and/or otherwise unenforceable.

*Id.* at 493 n. 2. One of the settling defendants, Pinnacle, challenged the propriety of the bar order, which barred Pinnacle's claims for indemnity, fraud and negligence against a codefendant, A & A. *Id.* at 495. There the Eleventh Circuit held that entry of the bar order was proper, and emphasized that A & A had expressed a "strong unwillingness to [settle] unless it was assured that Pinnacle's cross-claims would not subject it to further liability." *Id.* at 494. The district court below had explained:

> If litigation of cross-claims were allowed, the resources of the court, class members, class members' counsel, and defendants' counsel would continue to be expended, because it would be impossible to try cross-claims without addressing the complex facts underlying this litigation. . . . Settlements in complex cases cannot satisfy their ultimate purposes unless they conclude the litigation in its entirety.

*Id.* at 493. The Court further observed that defendants "buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation." *Id.* at 484. *Oil & Gas* further stated that there was little distinction between claims for contribution and independent claims because those causes of action were not independent of Pinnacle's liability to the plaintiffs. *Id.* at 495. One element of damages sought by Pinnacle's cross-claim was recovery to the extent it had been liable to the plaintiffs. *Id.* at 495–96. The Eleventh Circuit concluded that "Pinnacle's fraud and negligence claims 'are nothing more than claims for contribution or indemnification with a slight change in wording.' " *Id.* at 495–96 (citation omitted). Although the *Oil & Gas* court endorsed the propriety of the bar order, at no time did it have occasion to address whether such a bar order would be *required* in all circumstances. It simply explained that under the circumstances, that court believed the bar order requested was fair and appropriate. Moreover, that court did not explain beyond overlap of damages, why it assumed the claims were not "independent" instead of claims for contribution or indemnity.

In *Alvarado Partners*, several defendants settled a securities action with plaintiffs and sought entry of a bar order which would extinguish any and all claims by the nonsettling defendant against the settling defendants, including but not limited to claims for contribution and/or indemnification. This included all claims which were related to, based upon or arose out of the settled claims. *See* 723 F.Supp. 540, 547 (D.Colo.1989). The *Alvarado Partners* court observed that a number of states had enacted settlement bar statutes which would prevent rights of contribution after a complex action had settled and that the purpose of such statutes is to allow a settling defendant to " 'buy its peace' through a bar to any contribution action against the settling defendant." 723 F.Supp. at 550.

Although no such comparable federal statutory bar existed, the court commented that federal courts had long recognized that such bars would further the "public policy in favor of the settlement of complex securities actions." *Id.* at 551–52. In addition, the non-settling defendants argued that the court could not extinguish the pendent state law claims against the settling defendants. *Id.* at 554. The court held that it could extinguish the state law claims which sought damages for breach of warranty, breach of contract, fraud, and negligent misrepresentation, because those were "measured by" the nonsettling defendants' liability for violations of the securities laws. *Id.* However, to the extent the damages sought went beyond those for violation of the securities laws, the court held the state law claims "are independently viable pendent state claims" which it could not extinguish through a settlement bar. *Id.*

 E & Y seeks to apply the holdings of those cases which held that imposition of a bar against independent state law claims was appropriate in light of the federal policy to encourage settlement of securities actions to read into the PSLRA contribution bar a requirement that such independent state law claims are also barred. The PSLRA was passed after each of these cases, and contains very narrow language:

A *covered person* who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. *The order shall bar all future claims for contribution arising out of the action—*

(i) by any person *against the settling covered person;* and

(ii) by the *settling covered person against any person,* other than a person whose liability has been extinguished by the settlement of the settling covered person.

15 U.S.C. § 78u–4(f)(7)(A) (emphasis added). The Act defines a "covered person" as

(i) a defendant in any private action arising under this chapter [the Securities Exchange Act of 1934]; or

(ii) a defendant in any private action arising under section 77k of this title [section 11 of the Securities Act], who is an *outside director of the issuer* of the securities that are the subject of the action.

15 U.S.C. § 78u–4(f)(10)(C) (emphasis added). The corresponding right of contribution which is extinguished by § 78u–4(f)(7)(A) is established by statute in § 78u–4(f)(8), and the contribution bar itself affords a right of reduction of the ultimate judgment by either the percentage fault of the covered person or the amount actually paid in settlement by the covered person. *See* 15 U.S.C. §§ 78u–4(f)(7)(B)(i)(ii).

The plain language of the statute speaks of a bar against all future claims for contribution which arise out of the action. It says nothing about a bar of related state law claims, as it could have, had Congress meant to bar state law claims in addition to federal securities contribution claims. Moreover, despite E & Y's repeated protests in its earlier briefing that the PSLRA bar was meant to buy settling defendants "complete peace" when settling, this Court's own review of the legislative history of the PSLRA reveals that the history is silent on that issue. The Senate's report indicates that the major goals of the

PSLRA were to encourage voluntary disclosure of information by issuers, to empower investors to have control over securities litigation instead of lawyers, and to reduce frivolous "strike suits" and encourage meritorious suits. *See* S.Rep. No. 104–98, at p. 5–6, 104th Cong., 1st Sess.1995, *reprinted in* 1995 U.S.C.C.A.N. 679. The report also indicates that the joint and several liability provisions would be amended to impose full joint and severable liability on all defendants who engage in knowing securities fraud but to limit joint and several liability for defendants found liable but not for knowing securities fraud, to avoid undue burdens on defendants who were less culpable. *Id.* at 22. However, neither House's report indicates why the contribution bar was included and no statement in either report indicates that it was meant to encompass related state law claims. *See id.;* H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess.1995, *reprinted in part at* 1995 U.S.C.C.A.N. 730, 1995 WL 709276. Nor does either report say anything about affording defendants "complete peace" when settling. And E & Y does not point the Court to any other history which would give insight into the intended purpose of the contribution bar apart from its plain language.[1] The Court appreciates that several pre-PSLRA cases held that the imposition of a contribution bar, which might in certain circumstances encompass state law claims, was permissible and fair in light of the federal policy in favor of settlement of securities suits. However, none of those cases stated that such settlement bars would be required.

In light of the language of the PSLRA contribution bar, which focuses only on barring contribution claims, the Court is not convinced that the PSLRA intended to codify a requirement that related state law claims which seek to recover similar damages are also barred, notwithstanding the pre-existing federal common law which held that such a bar would be permissible. In fact, the language implies that the statute does not intend to impose a bar on independent state law claims because it does not include a corresponding provision for reduction of the ultimate judgment on the state law claims by the amounts paid in settlement or by the proportionate fault of the settled defendants. *See* 15 U.S.C. 78u–4(f)(7)(B).[2] In the absence of any statutory language or legislative history which would indicate an intent to codify a requirement that independent state law claims be barred in addition to contribution claims, this Court does not read such a requirement into the PSLRA bar.

Only a handful of district court cases have addressed the meaning of the PSLRA settlement contribution bar. At least one case has held that the PSLRA does not prohibit entry of a more comprehensive bar order than one which covers only contribution claims. *See In re Rite Aid. Corp. Sec. Litig.,* 146 F.Supp.2d 706, 726–28 (holding that the PSLRA does not contain any explicit language which would prohibit entry of a broader bar order than that provided for by the PSLRA and finding acceptable language in proposed settlement bar which barred all claims which

---

1. Moreover, this court's own review of testimony at various congressional hearings fails to uncover any discussion which would shed light on the specific purposes behind the contribution bar, beyond those apparent from the plain language.

2. Nor, apparently, does the language or history indicate that the statute was intended to

preempt state law claims. Although Cendant raises arguments in its additional response papers that the statute was not intended to preempt state law, E & Y replies that it does not claim that the statute preempts state law. The Court need not address this issue in any greater detail.

arose out of the action) (E.D.Pa.2001). However, *Rite Aid* is as unhelpful here as the cases cited by E & Y because it discussed only the propriety of entry of a comprehensive bar order. It did not discuss whether state law claims are automatically encompassed within the bar against "contribution" claims when a court agrees to entry of a bar order which bars contribution claims only to the extent required by the PSLRA bar and no further.

In its earlier opinion, this Court discussed at length another district court case from within this Circuit, *Lucas v. Hackett Assocs.*, 18 F.Supp.2d 531 (E.D.Pa.1998). That case warrants further attention here because the *Lucas* court's opinion contains some ambiguous language which this Court believes might be misinterpreted. In *Lucas*, plaintiffs brought an action against certain defendants under the federal securities laws and related state tort and contract theories. *See* 18 F.Supp.2d at 533. Certain defendants impleaded the plaintiffs' former attorney, and plaintiffs filed an Amended Complaint to allege breach of an escrow agreement, breach of a legal representation agreement and legal malpractice against the attorney. *See id.* In addition, the plaintiffs there asserted the same claims against the attorney in state court. Certain defendants settled with plaintiffs and sought entry of a settlement contribution bar order pursuant to the PSLRA. That order contained a provision which would bar any claim "for contribution or indemnity or otherwise" by non-settling parties against the settling defendants "based upon, relating to, or arising out of the settled claims, this action, a lawsuit pending in the Court of Common Pleas ... or the settlement of this action and the state action ..." *Id.* at 533. The *Lucas* court ultimately did not approve the proposed language because the order did not adequately protect the non-settling defendants, as it allowed a credit against the ultimate judgment against nonsettling defendants only if the nonsettling defendant were adjudicated a "joint tortfeasor" first. *Id.* at 535. Before it reached this conclusion, however, *Lucas* discussed the language of the PSLRA and stated that it must determine whether claims "arise out of" the action before the PSLRA bar order provisions could be applied to certain claims. *Id.* at 534. The court concluded that

> ... the 'arise out of language' encompasses the state law claims brought against defendant Murland [the attorney] by plaintiffs. Those claims arise out of the transactions underlying plaintiffs' securities claims, not only because they are causally linked-that is, but for the securities transactions, there would be no claims against Murland-but also because they are integrally related to the securities transactions, that is, Murland was hired to provide legal advise on the nature, structure, and risks of the ... transaction. *Because the claims against Murland arose out of 'the action' in this case, Section 78u–4(g)(7)(A) applies to any claim he may have for contribution.*

*Id.* at 534–35 (emphasis added). This language is confusing because it might be construed to address the propriety of the language that barred any and all claims arising out of the action against the non-settling parties. However, the last sentence indicates that this paragraph addressed only whether the court could properly bar *contribution* claims asserted by the attorney which arose out of the state law claims against him. The court did not need to address the broader language of the proposed order because it ultimately did not approve the contribution bar for other reasons. To the extent that the court's language might be construed to imply that it would have approved the

broader language, this Court finds nothing in *Lucas* discussion which indicates that it so interpreted the PSLRA provisions to *require*, rather than allow, such a broader bar. Furthermore, that court did not discuss the important distinction between contribution and direct liability, which this Court addresses below.

Moreover, this situation is quite unlike those in *Bendis, Oil & Gas, Alvarado Partners* or *Rite Aid*. In each of those cases, at least one defendant had requested imposition of the bar against independent state law claims in addition to ordinary contribution claims, and the Court was required to determine whether such a bar would be equitable in the face of opposition from one or more defendants. However, here neither Cendant nor E & Y sought to include any language which would preclude pursuit of independent state law claims in the PSLRA bar order which this Court entered in its approval of both settlements with plaintiffs. To the contrary, Cendant and E & Y sought the entry of settlement bars only to the extent required by the PSLRA and no further; each sought expressly to reserve its rights to assert any and all claims against the other, to the fullest extent allowed by law. This Court approved that language. Indeed, E & Y did not oppose the inclusion in the Stipulation of Settlement language which requires Cendant to remit to the class 50% of any recovery it obtains against E & Y, which may be an implicit acknowledgment that Cendant had the right to pursue some related claims against E & Y. Ernst & Young cannot have it both ways. It cannot disavow the language which was extensively and intensively negotiated by arguing that those

claims should be considered to be encompassed by the PSLRA's contribution bar because of the pre-existing case law which simply said that bars against state law claims would be permissible.

E & Y argues that in *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 457 (7th Cir.1982), discussed in this Court's April 16 opinion, the Seventh Circuit allowed Seidman, the auditor, to pursue its independent state law claims against Cenco after settlement only because Seidman had denied *any* liability for the alleged securities fraud and sought recovery of the entire amount of the settlement payment. In *Cenco*, the district court had dismissed the state law claims for lack of injury. *Id.* at 458. The Seventh Circuit stated that the district court must have assumed that Seidman was simply seeking indemnification. *Id.* However, the Seventh Circuit held that Seidman could pursue its common law tort and breach of contract claims against Cenco to recover amounts Seidman had paid in settlement and that those amounts constituted an injury. *Id.* Although Seidman had entered into a settlement with the plaintiffs, Seidman had not admitted wrongdoing or been adjudicated a wrongdoer and his claims could not be considered indemnity claims. *Id.* at 457–58. The opinion did not address whether those state law claims might be considered contribution claims and thus this aspect of *Cenco* is inapplicable here.[3]

E & Y also references *In re Leslie Fay Cos., Inc. Sec. Litig.*, 918 F.Supp. 749, 765 (S.D.N.Y.1996), which E & Y claims reached the same conclusion as *Cenco*. *See* E & Y Reply, at 7. E & Y states that *Leslie Fay* held that an accounting firm in

---

3. Nor did that portion of the *Cenco* opinion discuss the distinction between indemnity and the ability of a tortfeasor to recover independently against co-defendants under separate grounds. Accordingly, this aspect of *Cenco*

does not alter the Court's earlier determination that Cendant's state law claims were not indemnity claims. *See In re Cendant,* at 594–96.

a securities action could pursue an independent claim against another defendant if it could plead that it was completely without fault with regard to plaintiffs' allegations of Section 10(b) violations. In *Leslie Fay* the district court determined that a claim by a client's outside auditor, BDO, for negligent representation against the client which had allegedly engaged in securities fraud could withstand a motion to dismiss. The court held the claim was an independent claim and not an improper claim for indemnity in disguise. *See Leslie Fay*, 918 F.Supp. at 765. E & Y again is only partially correct: *Leslie Fay* did hold that the auditor's claims were not "indemnity claims in disguise" because they also sought to recover damages beyond amounts paid in settlement, including damages for "harm to its business and reputation as a result of its involvement in this litigation-involvement which was allegedly caused by [the client's] negligent misrepresentations to BDO." *Id.* at 766. Contrary to E & Y's reading of *Leslie Fay*, the court did not hold that in order to state an independent state law claim, the auditor necessarily was required to be innocent of any wrongdoing. Rather, the court mentioned that BDO did not assert that it was entitled to an exception from the traditional "American Rule" with regard to indemnification as a result of it having been "wholly absolved of any liability." *Id.* at 766. In contrast to the cases upon which the client relied, the *Leslie Fay* court held that there BDO did not simply seek indemnification for attorneys' fees for having to defend the suit against it but sought to recover for independent harm suffered as a result of the client's misrepresentations. *Id.* If BDO truly suffered such harm, the Court held that BDO could seek redress and the claim would not be an indemnity claim. *Id.*

Even though *Leslie Fay* did not even involve a discussion of whether the audi-

tor's state law claims constituted contribution claims, *Leslie Fay*'s reasoning about the distinction between claims for indemnity and independent claims, like this Court's own earlier discussion in its April 16 opinion, applies equally to the distinction between contribution claims and independent claims. This Court also disagrees with the conclusions in *Oil & Gas* and *Alvarado Partners*, upon which E & Y relies, that a claim whose damages overlap with what could be sought by contribution is automatically a contribution claim. Those cases did not address the critical distinction between independent state claims and contribution apart from the overlap of damages.

"Contribution ... is the right of one torfeasor to recover from another tortfeasor when both are liable to a victim and one has paid more than his or her equitable share of the common liability." *In re Cendant Corp.*, at 594, citing Rest. (Second) Torts § 886A (1979). "Contribution is an equitable doctrine based on the principle that a person who discharges a liability shared with another should not bear the sole obligation for payment." *Alvarado Partners*, 723 F.Supp. at 549, citing W. Prosser, *The Law of Torts* § 50 (4th ed. 971). "Contribution distributes plaintiff's damages among the wrongdoers by requiring each to contribute to plaintiff's total damages." *Id.*, citing 1 Dooley, *Modern Tort Law* 26.01 (1977). Essentially, contribution is based upon the liability of two or more joint tortfeasors to a common plaintiff and represents the tortfeasors' right to apportion damages according to their fault. The right to contribution does not depend upon proof that one tortfeasor has directly harmed another; it merely requires proof that both are liable to a plaintiff and one paid more than his or her fair share of the damages. Cendant argues:

[T]he elements that Cendant must prove to prevail on its independent claims are different from those it would have to prove on a contribution claim. Contribution exists irrespective of any relationship or obligations between the parties. To prevail on a claim for contribution a party need only prove that it became liable to the plaintiff and paid more than its fair share of damages. There is no need to prove that the party from whom contribution is sought owed or breached any duty to the party seeking contribution. Cendant's claims for negligence, fraud, breach of contract and breach of fiduciary duty will require it to prove the specific elements related to those claims, e.g., duty, breach, causation, etc.—elements that it would not be required to prove on a contribution claim. Cendant's claims are therefore fundamentally different from a claim for contribution.

Cendant Sur–Reply, at pp. 3–4. Cendant's argument has merit. As Cendant argues, that Cendant seeks as an element of damages to recover amounts it has paid in settlement is not what defines its claims; the basis for liability is what defines the nature of its claims. "As a matter of general contract and tort law, when a wrongdoer's conduct has caused another to be cast in foreseeable liability to a third party, the liability is recoverable as an element of damages." Cendant SurReply, citing *In re Sunrise,* 793 F.Supp. at 1316; *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 985–86 (E.D.N.Y.1988), *vacated in part on other grounds, In re Crazy Eddie Sec. Litig.,* 714 F.Supp. 1285 (E.D.N.Y.1989).

Here, Cendant's claims are each grounded in separate theories which require proof of different elements than does a simple claim for contribution, which requires only proof that two or more parties became liable to the plaintiffs and one party paid more than its fair share of the damages to the plaintiff. This Court's own reasoning in its earlier opinion, which explained why the state law claims were not indemnity claims, applies equally to why those same claims are not contribution claims. There the Court discussed several different cases which recognized that even if the damages might overlap, that did not necessarily transform a separate, independent state law claim into a claim for indemnity, because there is a "distinction between recovery under principles of contribution or indemnity versus ordinary, direct tort liability." 139 F.Supp.2d at 595. This Court discussed *Cenco*'s holding on remand that Seidman's claims against Cenco were not indemnity claims because they were based upon independent duties:

Recovery by indemnity between two defendants who have allegedly committed a tort on a third person is not the same thing as recovering because one defendant also committed a tort on the other. . . . The gist of Seidman's fraud claim is not that it is more equitable that Cenco pay for Seidman's loss to the class, but that Cenco has committed a tort to Seidman, and must pay damages for this, damages which happen to encompass the settlement payment. *That this element of damages overlaps what Seidman maybe could have recovered through indemnity does not make it indemnity.*

*Id.* (emphasis added), quoting *Cenco,* 642 F.Supp. at 541–42. If one replaces the parties' names, indemnity with "contribution," and the standard to recover under contribution, that reasoning applies equally here:

Recovery by [contribution] between two defendants who have allegedly committed a tort on a third person is not the same thing as recovering because one defendant also committed a tort on the

other.... The gist of [Cendant's state law claims] is not that [Cendant paid more than its fair share to the class], but that [E & Y] has [breached independent duties owed to Cendant], and must pay damages for this, damages which happen to encompass the settlement payment. That this element of damages overlaps what [Cendant] maybe could have recovered through [contribution] does not make it [contribution].

*See id.* Cendant explains this principle well by reference to *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962 (E.D.N.Y. 1988), *vacated in part on other grounds, In re Crazy Eddie Sec. Litig.,* 714 F.Supp. 1285 (E.D.N.Y.1989). In *Crazy Eddie,* the company asserted cross-claims against its auditor, Peat Marwick, which alleged fraud, negligence, breach of contract, and breach of fiduciary duty. 702 F.Supp. at 984. The court denied the auditor's motion to dismiss the contract claim on the ground that the auditor alleged an injury which should have been plead in tort, not contract. *Id.* at 985. The court also denied the auditor's motion to dismiss the negligence claim on the ground that the damages asserted should have been sought by way of a contribution claim. *Id.* at 986. As to the contract claims:

Peat Marwick has not cited any authority suggesting that Crazy Eddie's liability to plaintiffs, to the extent that it is caused by Peat Marwick's breach of contract, is not compensable as consequential damages. Cross-claimant " 'may recover as damages ... only such as would naturally arise from the breach itself, or those that might reasonably be supposed to have been contemplated by the parties when the contract was made.' " Liability of a corporation to purchasers of its shares naturally arises from the breach of an accountant's duty of due care to the corporate client in connection with public offerings. The

effect of Peat Marwick's opinion on those purchasers was undoubtedly contemplated by the parties when the contract was made. That liability, whether established at trial or resolved through settlement, is certainly an injury to the corporation and foreseeable to Peat Marwick. The cross-complaint thus properly alleges injury from breach of contract.

*Id.* at 985 (citations omitted). The Court continued:

Cross-claimant alleges that but for Peat Marwick's dereliction of duty, it would not have incurred liability to plaintiffs or injury to its business reputation, its going-concern value, and its creditworthiness. Injuries of this type are reasonably foreseeable consequences of an accountant's failure to review a public company's financial statements properly. The pleading is sufficient to allow cross-claimant to attempt to prove these damages at trial. *Although cross-claimant might perhaps have made a claim for contribution, the court will not dismiss the claim it made solely because another might have been asserted.*

*Id.* at 985–86 (emphasis added). Here, that Cendant might have asserted a contribution claim to recover the same damages does not convert its state law claims into contribution claims, so long as there is an independent basis for direct liability and the damages are a reasonably foreseeable consequence of the breach(es) of duty alleged. The Court finds that Cendant has plead independent breaches of duty which require different proofs from that of a claim for contribution. Cendant also seeks damages beyond recovery of a portion of the $2.8 billion paid in settlement, such as damages for the diminished value of the company and lost business opportunities. *See* April 16 slip op., at 21–22. Further-

more, this Court finds persuasive Cendant's additional argument that it is not uncommon for two different causes of action to provide the same recovery. Here, for example, Cendant has plead both breach of contract and various tort claims against E & Y, seeking essentially the same damages. It is obvious that a plaintiff could recover similar types of damages under contract and tort theories. That said, if Cendant's breach of contract claim were barred for some reason (*e.g.*, statute of limitations), such would not automatically bar recovery under the independent tort theories. Similarly, this Court does not believe that because Cendant might have plead a contribution claim-which it did, and which was dismissed-the damages sought automatically convert the state law claims into impermissible contribution claims.

## II. Motion to Certify For Immediate Appeal

E & Y offers the following "pure legal issue" which it seeks to appeal:

> [W]hether a solvent company can seek to force its former accountants to pay their alleged "fair share" of amounts the company paid to settle Section 10(b) claims notwithstanding (i) the company's admission that its senior managers turned the company into an engine of fraud and (ii) the entry of a contribution bar order pursuant to the PSLRA that bars any and all contribution claims brought by the company or against the accountants.

E & Y Reply in Support of Motion to Certify for Appeal ("E & Y Certif. Reply"), at 7. As stated, although E & Y originally sought to certify this Court's April 16, 2001 opinion for immediate appeal, the determination which E & Y seeks to appeal is actually decided in Part I of this Opinion. The Court treats E & Y's motion as directed only toward the determinations discussed in Part I of this Opinion.

E & Y argues that the question of whether Cendant can shift a portion of the settlement to E & Y is a question of law which depends upon the proper interpretation of the PSLRA. E & Y also asserts that this is a "controlling question" of law because of the size of the damages sought. E & Y claims that this is a controlling question of law because if the order is reversed and it is held that Cendant may not shift responsibility for any portion of the settlement, then the "face" of the litigation would be changed. *See* E & Y Br., at 3. Even if Cendant's claims against E & Y were not entirely eliminated, E & Y contends that the potential drastic reduction in damages would alter the parties' approach to the litigation. *Id.* In addition, E & Y claims that there is substantial ground for a difference of opinion regarding Cendant's ability to recover from E & Y, because (1) no case exists which held that an auditor may recover amounts paid in settlement from the issuer under state law theories of fraud, negligence or breach of contract; and (2) the PSLRA contribution bar provides grounds for a difference of opinion as to what constitutes a "contribution" claim. E & Y asserts that the appeal may materially advance the ultimate termination of this litigation because a final decision as to whether Cendant may pursue recovery against E & Y will have a "profound effect on the litigation." E & Y claims that the interlocutory appeal would not create any undue delay in the disposition of the case because of the present stay of discovery as to certain individuals and the Court's declaration that no dispositive motions would be decided before the criminal charges against Forbes and Shelton are resolved. Finally, E & Y contends that the PSLRA contribution bar is supposed to protect litigants from further litigation in addition to additional liability.

Cendant responds that this issue is not a controlling issue of law, because the litigation will be conducted in the same way regardless of resolution of that issue: Cendant has claims against E & Y to recover damages for amounts paid in legal and accounting fees arising from this litigation; contribution claims—which Cendant summarily says are not barred by the PSLRA contribution bar, without further explanation—with regard to the *PRIDES* and *Yeager* settled actions, as well as in the numerous other pending actions.[4] Consequently, Cendant maintains that the issue of whether Cendant may recover any portion of the $2.8 billion settlement of the class action is not "controlling." For the same reasons, Cendant asserts that an immediate appeal would not avoid any wasted trial time or litigation expense, because resolution of this issue raised by E & Y would have no effect on the PRIDES and other contribution actions. Cendant suggests that at most, resolution of the issue could limit the amount of damages Cendant may recover on its independent state law claims but would not eliminate any of Cendant's claims.

Second, Cendant argues that there is no substantial ground for a difference of opinion with respect to Cendant's ability to recover the portion of its payment to the CalPers class attributable to E & Y's breached of independent duties owed by E & Y to Cendant as its independent outside auditor. It argues that a number of cases discussed in this Court's April 16 opinion agree that the fact that some of the damages may overlap with damages paid to the class does not change the independent nature of the claims. Cendant Opp., at 10, citing *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449 (7th Cir.1982); *In re Sunrise*

*Sec. Litig.*, 793 F.Supp. 1306 (E.D.Pa. 1992).

Finally, Cendant disagrees that an immediate appeal will advance the final termination of this litigation because all claims will proceed without any effect on the conduct of the litigation regardless of the Circuit's ruling. Because an immediate appeal will not eliminate or alter any of the claims, says Cendant, but would only reduce the amount of damages recoverable, such would not materially advance ultimate termination of the litigation.

## DISCUSSION

### Standard for Certification For Appeal Under 28 U.S.C. § 1292(b)

As Cendant points out, the denial of a motion to dismiss is usually considered an interlocutory as opposed to a final order. *Akerly v. Red Barn System, Inc.*, 551 F.2d 539, 543 (3d Cir.1977); *Piazza v. Major League Baseball*, 836 F.Supp. 269, 270 (E.D.Pa.1993). Under 28 U.S.C. § 1292(b), district courts may, in their discretion, certify an interlocutory order for immediate appeal. Before an order is certified for appeal, the district court must determine that the following conditions are met:

(1) The order involves a controlling question of law,

(2) as to which there is a substantial ground for a difference of opinion, and

(3) the final resolution of the appeal must have the potential to materially advance the determination of the litigation.

*See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir.1974); 28 U.S.C. § 1292(b). Certification is not mandatory

---

4. This is apparently because E & Y is not a settled party in those actions and is not a

"covered person" under the PSLRA contribution bar in those other settled actions.

even if the three criteria are met; rather, certification is wholly discretionary. *See Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir.1976). A controlling question of law includes one which "if erroneous, would be reversible error on final appeal." *Id.* at 755. It is not necessary, however, that a reversal of the order would terminate the litigation. As the *Katz* court explained, "controlling" means "serious to the conduct of the litigation, either practically or legally.... And on the practical level, *saving of time of the district court and of expense to the litigants was deemed by the sponsors [of the statute] to be a highly relevant factor." Id.* (emphasis added) (citation omitted). One purpose of Section 1292(b) is " 'to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary....' " *Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J.1993), *quoting Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir.1973), *cert. denied sub nom., Cronrath v. Johnson*, 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974). It is not sufficient for the movant merely to disagree with an adverse ruling of the district court. *See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F.Supp.2d 394, 398 (D.N.J.2000); *Kapossy v. McGraw-Hill, Inc.*, 942 F.Supp. 996, 1001 (D.N.J.1996); *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa.1983).

### Analaysis

#### 1. Controlling Issue of Law

■ E & Y argues that the issue of whether Cendant may "shift to E & Y a portion of the $2.8 billion it agreed to pay in settlement" of the CalPers action depends upon interpretation of the PSLRA and that the litigation will be fundamentally changed if Third Circuit reversed this Court's ruling "and hold that Cendant cannot seek to shift any portion of the $2.8

billion settlement payment to E & Y." E & Y Brief in Support of Certification ("E & Y Certif. Br."), at 3. Cendant responds that the litigation will not be substantially changed because even if the Court holds that Cendant may not recover a portion of the settlement payment, Cendant seeks other damages which are nevertheless recoverable. This Court agrees with Cendant that because Cendant seeks other damages, such as for the decreased value of the company and lost business opportunities, the face of the litigation will not be substantially changed sufficient for this to be a controlling question of law. However, the related question, whether the claims are completely barred because they constitute contribution claims, is the sort of legal question which would terminate the litigation if reversed on appeal, because Cendant would have no remaining crossclaims against Cendant. However, for the reasons below, this Court finds that there is not a substantial ground for a difference of opinion as to either issue.

#### 2. Whether There Are Substantial Grounds for Dispute and Whether Review Would Materially Advance Resolution

■ E & Y argues that the PSLRA contribution bar, which has not yet been interpreted in this context, provides a substantial ground for dispute:

The contribution bar provisions of the PSLRA also create a substantial ground for a difference of opinion. The PSLRA bars any claims for "contribution" either by or against a settling party. The contours of what constitutes a "contribution" claim under the PSLRA have yet to be defined by the courts. This Court concluded that the PSLRA contribution bar does not apply because the legal basis for Cendant's claims is an alleged breach of independent duties owed by E

& Y to Cendant—rather than a claim that E & Y acted as a joint tortfeasor in deceiving plaintiffs.

E & Y Certif. Br., at 4. E & Y argues that other courts hold that a claim is a contribution claim if it is "measured by" the defendant's liability to the plaintiff, regardless of what label is applied to the claim. *See* E & Y BR., at 5, citing *TBG, Inc. v. Bendis,* 36 F.3d 916, 928 (10th Cir.1994); *In re U.S. Oil and Gas Litig.,* 967 F.2d 489, 496 (11th Cir.1992). As this Court has stated in Part I, that is not, in fact, what *Bendis* said. *Bendis* merely held that it would be appropriate to bar, in addition to indemnity and/or contribution claims, those claims which sought to recover the same damages. And this Court has already rejected the conclusion of *Oil & Gas* that there is really no distinction between a contribution claim and one which seeks recovery under a different theory, particularly when, as here, the claim seeks to recover other types of damages as well. E & Y contends that Cendant admits it seeks to "measure" its potential damages from E & Y by Cendant's liability to the Class. E & Y references Cendant's argument made in opposition to the motion to dismiss the contribution claim:

> Cendant contends that it is entitled to recover from E & Y the amount it agreed to pay the Class in settlement, but admits that its claim against E & Y must be reduced by whatever amount a jury decides is properly attributable to Cendant's own liability to plaintiffs. (*See* Cendant's Opp. at 8 (stating that Cendant seeks recovery of only part of the $2.8 billion settlement and that a jury would have to "determine what portion of the total loss was caused by [E & Y], and will not award sums attributable to [Cendant's] own acts or to other cases")). *In other words, Cendant contends that it was a joint tort-feasor with*
>
> *E & Y and seeks to "share" its own settlement payment with E & Y depending on a jury's determination of the parties' relative fault. That is the very definition of a contribution claim, whatever label Cendant may want to attach to it.*

E & Y Certif. Br., at 5 (emphasis added). The arguments to which E & Y refers were made in support of Cendant's *contribution* claim, Count VIII, which this Court has dismissed. Cendant did not attempt to justify its state law claims *solely* by the amount Cendant paid in settlement of the CalPers action; rather it also discussed other types of damages for which it seeks recovery, for example, damages for the diminished value of the company and lost business opportunities. *See* 139 F.Supp.2d at 598–599.

E & Y also argues that there are no cases decided under the PSLRA that directly address whether an attempt to use state law claims to " 'shift the portion of the [settlement payment] ultimately found to be attributable to' a co-defendant ... is an impermissible end-run around the contribution bar statute." E & Y Certif. Reply, at 7. The lack of case law precisely on point does not automatically create a ground for a difference of opinion, because E & Y cannot dispute that numerous cases allow a settled party to recover under independent state law theories even if the damages might overlap with those covered by a settlement payment. And this Court has already concluded, in Part I of this Opinion, that there is no support in the language or history of the PSLRA contribution bar for a court to infer such a requirement and that under basic contribution principles, the fact that a person might have a contribution claim does not preclude that party from seeking recovery

of damages which overlap so long as there is an independent basis for recovery.

E & Y again advances *In re the Leslie Fay Cos., Inc. Sec. Litig.*, 918 F.Supp. 749, 765 (S.D.N.Y.1996). *See* E & Y Br., at 4 n. 2. E & Y states that *Leslie Fay* held that an accounting firm could pursue an independent claim against another defendant if it could plead that it was completely without fault with regard to plaintiffs' allegations of Section 10(b) violations. E & Y contends that the *Leslie Fay* court held that otherwise, the claim would not be an *"independent non-contribution claim, but would simply be a claim to re-allocate costs as between alleged joint tort-feasors."* E & Y Br., at 4 n. 2 (emphasis added). This Court has already addressed that *Leslie Fay* considered only whether state law claims could be considered *indemnity* claims, not *contribution* claims. But in any event, *Leslie Fay's* analysis actually supports this Court's conclusion that Cendant's claims are not mere contribution claims because they seek recovery for independent harms such as harm to the value of the company and lost business opportunities.

Finally, E & Y challenges this Court's conclusion that the Seventh Circuit's 1982 decision in *Cenco v. Seidman & Seidman* does not compel dismissal of Cendant's state law claims. As this Court discussed in its April 16 opinion, *Cenco* held that a company may not shift all liability for fraud to its outside accountant when fraud permeates the top management of the company. *See* slip op., at 18, citing *Cenco*, 686 F.2d at 454–56. However, this Court found that in light of (1) the passage of the PSLRA and stricter standards for accountant detection and reporting of fraud; (2) *Cenco's* reliance on the then strict contributory negligence scheme in Illinois; and (3) New Jersey's current comparative negligence scheme, *Cenco's* rationale was in-

applicable to the present circumstances. *See* slip op., at 18–19. Even if this were a "controlling question," this Court concludes that there are not grounds for substantial dispute as to this issue because *Cenco* was decided almost two decades ago, before the advent of the PSLRA and stricter standards of detection imposed upon accountants, and in the context of a contributory negligence instead of a comparative negligence regime. *See* April 16 slip op., at 19–20. Moreover, this Court found that it is inappropriate to impute knowledge to Cendant, the surviving company of the merger, because the ultimate actions of the management were against the best interests of the company. *See* 139 F.Supp.2d at 597–98. The *Cenco* court found that because the company's managers were acting for the benefit of the company, the fraud would be imputed to the company. Presumably this was a corollary to the principle articulated by that court that in order for the company to have been defrauded by the accountant, it must have actually relied upon the accountant's misrepresentations, and could not have done so if the company was deemed complicit in the fraud. *See* 686 F.2d at 454. These principles do not translate perfectly to the merger context. This Court already held that as in *Battenfeld v. Baird, Kurtz & Dobson*, 60 F.Supp.2d 1189, 1218 (D.Kan. 1999), when one company defrauds another company into entering into a merger, the court should not impute the first company's fraud to the surviving company under *Cenco*. *See* 139 F.Supp.2d at 597.

Although E & Y contends it has found "not a single case" which found that an outside auditor could recover damages for "amounts it had paid to settle a federal securities law action," E & Y fails to cite such a case that has held to the contrary aside from *Cenco*, which this Court deems

inapplicable.[5] Although E & Y argues that *Cenco* itself creates a ground for dispute, it offers nothing to rebut this Court's conclusion that *Battenfeld's* reasoning is more pertinent than *Cenco's*.[6]

The Court finds that there are not substantial grounds for dispute as to the issue of whether Cendant's claims against E & Y are really contribution claims and/or whether the damages they seek which overlap with what would be barred under the PSLRA contribution bar if the claims were styled contribution claims are equally barred under the PSLRA bar. This Court has already rejected those contentions in Part I of this Opinion and will not repeat those arguments. Nor is it critical that there is little or no case law that interprets the PSLRA contribution bar. There is simply no support for E & Y's contention that the state law claims are contribution claims or that the PSLRA intended to encompass damages sought by state law claims which could have been recovered by contribution.

The Court also disagrees with E & Y's contention that a substantial ground for dispute exists in the policies underlying the PSLRA. E & Y argues:

> The PSLRA was designed to encourage settlement, including partial settlements, by granting a settling party *complete immunity from claims by co-defendants to recover amounts paid to the plaintiff.* But if Cendant were right, *auditors would never be able to buy complete peace by settling Section 10(b) claims asserted against them:* even after settling, auditors would always be subject to claims by the issuer that the auditor should be held responsible for at least a portion of whatever the issuer had to pay to the plaintiff class, either as a result of the company's own settlement or a judgment. In each case, the claim would be the same as it is here: that the auditor breached duties it owed to the company by negligently failing to discover the company's fraud or by deliberately failing to disclose the fraud and should therefore by held liable to the company for some portion of the damages or settlement the company was required to pay to discharge its own liability to the plaintiff class. *Surely there is*

---

**5.** The one allegedly contrary case which E & Y cites, *In re the Leslie Fay Cos., Inc. Sec. Litig.*, does not contradict this holding. E & Y claims that the court there stressed that an accounting firm seeking to pursue an independent claim against another defendant would have to be able to plead and prove that it was "completely without fault as to plaintiffs' claim for violation of Section 10(b)." E & Y Certif. Br., at 4 n. 2, citing 918 F.Supp. at 765. As this Court already explained, *Leslie Fay* discussed whether those claims would be impermissible *indemnity* claims, not contribution claims.

**6.** Furthermore, this Court believes that *Cenco's* own rationale supports this determination: *Cenco* relied on the objectives of tort law, namely to compensate victims. When company managers act to benefit the company, and the shareholders benefit as a result, then the fraud of the company's managers should be imputed to the company to prevent recovery against the auditor, because the company cannot have relied upon the auditor's reports, and the shareholders should not be allowed to recover when they have already benefitted. Here, however, Cendant was formerly HFS, which acquired CUC. In effect, it is alleged that CUC defrauded HFS and that Cendant, the surviving company was a victim. However, even if the fraud were imputed to CUC to prevent recovery against E & Y, that does not mean that the fraud should be imputed to Cendant for purposes of preventing recovery against E & Y. Even if CUC itself could not have reasonably relied upon E & Y's audits, it cannot be said that HFS, and consequently its successor, was not harmed by E & Y's alleged misrepresentations and should not be allowed to recover against E & Y.

*a substantial ground for believing that this is not what Congress had in mind.* E & Y Certif. Br., at 5–6 (emphasis added). First, E & Y may be right that Congress sought to bar all contribution claims arising out of the action. Indeed, this Court dismissed Count VIII because it agreed that the PSLRA contribution bar applied to all settled defendants. However, as this Court concluded in Part I on this Opinion, there is simply no support that Congress intended the PSLRA to allow a settling defendant to buy "complete peace" either in the text of the amendment or in its legislative history. Nor is there anything in the language or history of the amendment to demonstrate an inference that Congress intended to bar state law claims.

E & Y's argument that auditors would never be able to buy complete peace of mind is disingenuous when raised here, because when Cendant and E & Y sought to settle claims by plaintiffs against them, but each explicitly sought to preserve any and all claims against the other to the extent allowed by law. Had E & Y truly wanted to buy complete peace, it could have insisted that Cendant agree to release E & Y from any and all claims arising out of the action, including state law claims, however styled. E & Y did not do so. To repeat, E & Y cannot have it both ways: E & Y expressly sought to preserve any and all claims allowed against Cendant to the extent permitted by law and agreed that Cendant would be in an identical position. It cannot now seek cover from a "hidden" intent in the securities laws to bar independent state law claims not contribution claims.

E & Y does not deny that the cases upon which this Court relied did allow settled defendants to pursue state law claims against co-defendants even if certain of the damages potentially recoverable overlapped with what could have been recovered in indemnity claims.

Finally, the Court does not believe that resolution of E & Y's question by the Circuit would materially advance the termination of this litigation. Although Cendant contends it has damage claims worth hundreds of millions of dollars in legal fees expended in defense of this and other litigation, E & Y responds that Cendant as no right to recover defense costs from E & Y when it has admitted that its senior management perpetrated the fraud. This may be a correct statement of the "American Rule" that usually, joint tortfeasors must bear their own share of attorneys' fees, unless one has been absolved of liability. *See Leslie Fay*, 918 F.Supp. at 766 (collecting cases). The Court does not decide the merits of this argument here because it was not raised before. However, whether Cendant may recover damages for its legal expenses is irrelevant, because Cendant seeks other damages apart from those that overlap with the CalPers settlement payment, such as those for damage to the value of the company and lost business opportunities. Although in reply, E & Y asserts that the damages Cendant seeks are negligible in comparison to the amount of the settlement, the Court declines to evaluate the relative value of the damages sought and finds that resolution of the contribution bar issue would not dramatically change the nature of the litigation sufficient to allow interlocutory appeal of that issue.

## CONCLUSION

For the foregoing reasons, E & Y's motion to dismiss Cendant's Amended Cross Claims as impermissible contribution claims, or in the alternative to strike the prayer for damages which seeks to recover a portion of the $2.8 billion which Cendant paid to plaintiffs in settlement as barred

under the PSLRA is denied; E & Y's motion to certify this Court's April 16 order, and this order, for immediate appeal is denied.

**SO ORDERED.**

### ORDER

Defendant Ernst & Young, LLP ("E & Y") moves to dismiss each of Cendant's Amended Cross–Claims which assert state law claims against E & Y, on the ground that they are impermissible contribution claims and are barred by the PSLRA settlement contribution bar. Alternatively, E & Y seeks to strike the part of Cendant's prayer for damages which seeks to recover a part of the $2.8 billion which Cendant paid to plaintiffs in settlement, on the ground that those damages are barred by the PSLRA contribution bar.

E & Y also moves to certify this Court's April 16, 2001 interlocutory order, which granted in part and denied in part E & Y's motion to dismiss Cendant's cross-claims in the consolidated shareholder class action litigation, for immediate appeal pursuant to 28 U.S.C. § 1292(b). Upon review of the parties' submissions, and for the reasons stated in the accompanying opinion,

It is on this 15th day of August, 2001:

ORDERED that E & Y's motion to dismiss Cendant's state law cross-claims is DENIED; it is further

ORDERED that E & Y's request to strike the prayer for damages which seeks recovery of a portion of the $2.8 billion Cendant paid to plaintiffs in settlement is DENIED; and it is further

ORDERED that E & Y's motion to certify this Court's April 16, 2001, order and its companion opinion found in Part I

of this Opinion, for immediate appeal is denied.